No. 100,457

STATE OF KANSAS, *Appellee*, v. EDRICK EDWARDS, *Appellant*.

(243 P.3d 683)

Opinion filed November 24, 2010.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Edrick Edwards appeals his convictions for felony murder and attempted aggravated robbery. Edwards claims that his case should have been dismissed for a statutory speedy trial violation; that the district court should have suppressed his custodial statements as being involuntary; that the district court should have given his requested instruction on aiding and abetting; that

the district court should not have admitted highly prejudicial photographs at trial; that the district court erred in denying his request to modify the limiting instruction on K.S.A. 60-455 evidence; and that cumulative trial errors substantially prejudiced his right to a fair trial. Finding no reversible error, we affirm.

## FACTUAL OVERVIEW

The charges against Edwards, and three others, stemmed from an attempted armed robbery of Donyel Bagsby, during which Bagsby was fatally shot with a small caliber weapon. The incident occurred inside the Bagsby's home, where one of the men, Samuel Toliver, had gained entrance under the guise of purchasing marijuana. The State effected a plea agreement with Toliver whereby he was offered a reduced charge of involuntary manslaughter in exchange for his testimony against Edwards and the two other participants.

Toliver testified that the four men had spent the day driving around and smoking marijuana. At some point, the men hatched a plan to rob Bagsby, who they knew to be a small-time marijuana dealer. At the Bagsby residence, Toliver took the point. Mrs. Bagsby answered Toliver's knock and Bagsby came to the door, where he and Toliver began negotiating the price of the marijuana Toliver asked to purchase. Edwards then pushed the door open and entered the residence, carrying a shotgun. Bagsby and Edwards wrestled, and during the struggle, Bagsby was shot. Bagsby was able to shove Edwards out of the house, prior to collapsing and dying of massive blood loss before Mrs. Bagsby's 911 call could be answered. Toliver remained in the residence, at Mrs. Bagsby's request, and he was present when law enforcement arrived.

Edwards was subsequently arrested, *Mirandized*, and interrogated. Initially, Edwards denied even being present at the Bagsby house. Eventually, he related a version of events that had him at the Bagsby house with the others to buy drugs, but without any knowledge of a plan to rob the dealer. He also denied being in possession of a firearm when he entered the house.

Edwards was charged with felony murder and attempted aggravated robbery and was arraigned on March 7, 2007. The applicable

procedural history will be related under the pertinent issues below. Ultimately, Edwards was convicted of both charges and sentenced to a hard-20 life sentence, and he filed this direct appeal. We have original jurisdiction under K.S.A. 22-3601(b)(1).

## Statutory Speedy Trial

For his first issue, Edwards claims he was denied his right under K.S.A. 22-3402(1) to be brought to trial within 90 days after arraignment, and, therefore, he must be discharged. The State does not challenge the applicability of the 90-day limit, but asserts that under the provisions of K.S.A. 22-3402(1), (3), (5)(b), and (5)(d), Edwards was brought to trial in a timely manner. K.S.A. 22-3402 provides, in relevant part:

"(1) If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within 90 days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (5).

. . . .

"(3) If any trial scheduled within the time limitation prescribed by subsection (1) or (2) is delayed by the application of or at the request of the defendant, the trial shall be rescheduled within 90 days of the original trial deadline.

. . . .

"(5) The time for trial may be extended beyond the limitations of subsections (1) and (2) for any of the following reasons:

. . . .

(b) A proceeding to determine the defendant's competency to stand trial is pending and a determination thereof may not be completed within the time limitations fixed for trial by this section. If the defendant is subsequently found to be competent to stand trial, the trial shall be scheduled within 90 days of such finding;

. . . .

(d) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than 30 days may be ordered upon this ground."

Edwards was arraigned on March 7, 2007, which started the 90-day speedy trial clock. A trial date was set for April 30, 2007. At Edwards' requests, the trial was continued to June 4, and then later

continued to June 18, 2007. On June 18, Edwards requested and the district court ordered that Edwards be evaluated by Comprehensive Community Care of Sedgwick County (COMCARE) to determine his competency to stand trial. The order suspended the proceedings until further order of the court and directed COMCARE to report back to the district court with its opinion as to the defendant's competency to stand trial within 60 days. COMCARE submitted its evaluation, dated August 6, 2007, and the district court issued an order on August 10, 2007, that found Edwards to be competent to stand trial, that ordered the proceedings which had been suspended to be resumed, and that placed the case on the jury trial docket for October 1, 2007.

On September 20, 2007, defense counsel prepared a motion to discharge Edwards for a violation of his statutory speedy trial rights, which motion was file-stamped the next day. In the motion, Edwards acknowledged that the delays between April 30 and August 10, 2007, resulted from the application or fault of the defendant and were excluded from the statutory speedy trial computation. However, he argued that the remaining 107 days between the March 7 arraignment and the October 1 trial date were attributable to the State, thus requiring his discharge under K.S.A. 22-3402(1). In the motion's prayer, Edwards alludes to the State's "failure to proceed by the alternative as provided in K.S.A. 22-3402(3)," albeit the motion contains no explanation of such an alternative argument.

The court heard the motion on September 28, 2007. At stake for the State, i.e., for all of the citizens of this sovereignty, was the question of whether a person charged with first-degree murder would be set free without ever having a jury determine if he was guilty. At stake for the defendant was the protection of his statutory right to a speedy trial, and obviously, his immediate freedom. Notwithstanding the potential consequences, the judge chose to memorialize his ruling by hand writing on a preprinted Motion Minutes Sheet on which the checkmark next to "overruled" was explained by the unsatisfactory statement, "Per the record." Apparently, the judge was referring to his statements from the bench about the 18th Judicial District being "the busiest court in the state,

and [it has] a crowded calendar in setting the trial date," suggesting that the court was relying on the one-time 30-day continuance permitted under K.S.A. 22-3402(5)(d). However, the court also referred to K.S.A. 22-3402(5)(b), which deals with a competency evaluation continuance, rendering the bench soliloquy somewhat unclear.

Edwards then filed two additional requests for continuances, during which he filed motions to suppress his statements and to prevent the admission of photographic evidence. The trial commenced on December 18, 2007. However, the parties' speedy trial arguments focus exclusively on the period between March 7 and October 1, 2007.

*Standard of Review*

This court conducts a de novo review of potential violations of a defendant's statutory right to a speedy trial because "[t]he primary issue in such appeals—the computation of days to be assessed against the so-called speedy trial clock—requires some level of statutory interpretation." *State v. Vaughn,* 288 Kan. 140, 143, 200 P.3d 446 (2009); see, *e.g., State v. Mitchell,* 285 Kan. 1070, 1080, 179 P.3d 394 (2008); *State v. Adams,* 283 Kan. 365, 368, 153 P.3d 512 (2007); *State v. White,* 275 Kan. 580, 598, 67 P.3d 138 (2003). However, to the extent the outcome relies upon a factual finding by the district court, our review is to determine whether the factual finding is supported by substantial competent evidence. *Vaughn,* 288 Kan. at 143.

*Analysis*

The parties do not dispute that the time between the March 7 arraignment and the April 30 initial trial date is attributable to the State, although the State correctly points out that the period contains 54 days, rather than the 55 days used in Edwards' calculations. We take the liberty of adjusting Edwards' arguments to reflect a correction of the 1-day miscount. Likewise, the parties agree that Edwards applied for and is charged with the continuances of the trial date from April 30 to June 18, 2007. Therefore, our analysis effectively begins with the June 18 order granting Edwards' motion for a competency evaluation. On that date, the State was charged

with 54 days, leaving 36 days remaining in the original 90-day limitation period.

K.S.A. 22-3402(1) contains two exceptions to discharging a defendant who has not been brought to trial within 90 days of arraignment: (1) if "the delay shall happen as a result of the application or fault of the defendant, or," (2) if "a continuance shall be ordered by the court under subsection (5)." Both Edwards and the State argue that the speedy trial issue in this case is resolved by applying the first exception—the defendant's delay—and that we should not or need not resort to the provisions of subsection (5) because the second exception—the court-ordered continuance—is inapplicable. Alternatively, the State argues that Edwards' trial was also timely under the court-ordered continuance exception.

Edwards interprets the defendant's delay exception as stopping the speedy trial clock on June 18, 2007, when the court granted his motion for a competency evaluation, and restarting the countdown on August 7, 2007, when the court received COMCARE's evaluation report. Accordingly, Edwards argues that the deadline to bring him to trial was September 12, 2007, *i.e.*, 36 days after receipt of the evaluation. Therefore, Edwards asserts, the October 1 trial date violated his statutory right to a speedy trial, and he should have been discharged from further liability to be tried for the crimes charged.

We pause briefly to note that Edwards' trial counsel argued below that the clock recommenced ticking on August 10, 2007, the date on which the district court held a hearing and made its finding that Edwards was competent to stand trial, rather than on the date the court received COMCARE's evaluation report. Although the 3-day disparity in appellant's argument is insignificant in this case, we should clarify that a delay occasioned by the defendant's competency evaluation necessarily continues until the district court has had a reasonable opportunity to comply with K.S.A. 22-3302(1), which requires the court to conduct a hearing to determine defendant's competency. See also K.S.A. 22-3402(5)(b) (providing for the scheduling of trial within 90 days of the *finding* that defendant competent to stand trial). Therefore, the earliest restart of the speedy trial clock against the State was August 10, 2007, which

would push back the deadline under Edwards' argument to September 15, 2007. Again, that disparity is not dispositive in this case, given the October 1 trial date.

In contrast, the State contends that defendant is charged with all of the delay between the June 18 evaluation order and the October 1, 2007, trial date. In other words, the State believes that the delay occasioned by Edwards' competency motion does not end upon the court's finding of competency, but rather the delay continues to accrue against the defendant until the new trial date that the court sets after finding defendant competent. For support, the State points to *State v. Brown*, 283 Kan. 658, Syl. ¶ 2, 157 P.3d 624 (2007).

In *Brown*, a trial date had been set for August 20, 2003. The defendant moved to continue the trial date to allow the defense an opportunity to retain an expert witness. The district court granted the continuance on August 1, 2003, setting the new trial date for October 27, 2003. The issue on appeal was whether the calculation of the period chargeable against the defense should begin with the date the continuance was granted or the date of the original trial setting, *i.e.*, which party was responsible for the 19 days between August 1 and August 20, 2003. The ending date of the calculation, October 27, 2003, was not disputed. *Brown* held those up-front 19 days were chargeable against the defense and stated in the syllabus upon which the State relies: *"Under the facts of this case,* the delay from the date the judge granted defendant's motion for continuance of trial until the rescheduled trial date was chargeable against the defendant for speedy trial purposes pursuant to K.S.A. 22-3402(1)." (Emphasis added.) 283 Kan. 658, Syl. ¶ 2.

At oral argument, the State's attorney was adamant that the cited syllabus in *Brown* definitively sets forth a bright-line, black-letter-law rule in this state that all delays occasioned by any defense motion will continue to be chargeable to the defendant "until the rescheduled trial date." 283 Kan. 658, Syl. ¶ 2. In addition to reading too much into the holding of the case, the State conveniently ignores the explicit qualifying phrase in the syllabus: "[u]nder the facts of this case." Those facts were that Brown had specifically applied for a new trial date and the rescheduled date was set to

accommodate his continuance request, *i.e.*, the new trial date was the judgment on the defense motion. On appeal, Brown agreed that he was chargeable with the time *to* the October 27, 2003, rescheduled trial date; the only dispute was when to *start* counting the days.

Here, Edwards asked for a competency determination, rather than a specific new trial date. Indeed, if the result of his request had been a determination that Edwards was incompetent to stand trial, there would not have been a rescheduled trial date. The goal of Edward's application for a delay of the trial was accomplished on August 10, 2007, when the district court made a finding on defendant's competency to stand trial. The new trial could have been scheduled for any date after August 10, 2007, and still have accommodated the defendant's purpose in applying for a delay of the trial, in contrast to the situation in *Brown* where the new trial date was the sole purpose of the defense motion.

Perhaps a more fundamental question, which Edwards does not explore, is whether the delay occasioned by a competency evaluation should be considered a court-ordered continuance under the second exception, instead of a delay resulting from the application or fault of the defendant under the first exception. A competency evaluation can occur without being requested by the defendant or defendant's counsel. K.S.A. 22-3302(1) permits a prosecuting attorney to request a determination of the defendant's competency to stand trial and further contemplates that the court, based upon the judge's own knowledge and observation, may proceed *sua sponte* to a competency determination. Regardless of the genesis of the inquiry, the statute provides that the court is to make an initial finding "that there is reason to believe that the defendant is incompetent to stand trial." K.S.A. 22-3302(1). Upon such a finding, the statute mandates that the "proceedings shall be suspended and a hearing conducted to determine the competency of the defendant." K.S.A. 22-3302(1). In other words, a court is statutorily required to order the suspension of criminal proceedings when it becomes aware—from any source—that there is reason to believe that the defendant is incompetent to stand trial.

The State suggests that the delay occasioned by competency proceedings should be treated differently when requested by the defendant or defendant's counsel. In that event, the State argues that the delay results from the application or fault of the defendant, whereas a suspension emanating from a prosecutor's request or on the court's own observation and knowledge is a court-ordered continuance governed by K.S.A. 22-3402(5)(b). We disagree. Regardless of the source of information that gives the court reason to believe the defendant is incompetent to stand trial, the ensuing delay results from that finding and from K.S.A. 22-3302(1)'s mandate that the court order a suspension of the criminal proceedings. Perhaps a delay created by the defendant's request for evaluation, prior to the court's "reason to believe" finding, could be considered as resulting from the defendant's application or fault. However, once the court has made its finding and ordered a suspension, the delay results from a court-ordered continuance.

Here, the State did not object to the district court's June 18, 2007, Order for Determination of Competency. Accordingly, we presume the court made the requisite finding that it had reason to believe that Edwards was incompetent to stand trial. See *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009) (appellate court ordinarily presumes trial court found all facts necessary to support its judgment). In that order, the district court specifically ordered that the proceedings against Edwards be suspended until further order of the court; that Edwards be evaluated by COMCARE for his competency to stand trial; and that the director of COMCARE report the results of its evaluation to the court within 60 days. Contrary to the State's contention, the delay was a court-ordered continuance, rather than a result of the application or fault of the defendant. Likewise, contrary to Edwards' contention, the court-ordered suspension of proceedings under K.S.A. 22-3302(1) was sufficient to qualify as a court-ordered continuance under the language of the second exception of K.S.A. 22-3402(1).

Accordingly, our speedy trial analysis will focus on the second exception of K.S.A. 22-3402(1), a continuance ordered by the court under subsection (5). Given that we are not applying the defendant's delay exception, we need not discuss the confusing provision

in K.S.A. 22-3402(3) which speaks to rescheduling a trial within 90 days of the "original trial deadline" where the trial scheduled within the limitations of subsections (1) and (2) has been delayed by the application or request of the defendant.

As noted, the judge hearing the speedy trial motion appeared to rely on the justification for extending the time of trial beyond the limitation period set forth in K.S.A. 22-3402(5)(d). That subsection permits the court to extend the trial date beyond the limitation in subsections (1) or (2) where "[b]ecause of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed by this section." Only one continuance of not more than 30 days may be ordered under that "crowded docket" provision.

In overruling Edwards' motion for discharge, the judge presiding over that hearing determined that another judge who set the October 1 trial date must have been thinking about invoking K.S.A. 22-3402(5)(d), because everyone knows that their judicial district is the busiest court in the state. Further, the motion judge noted that in *State v. Rodriguez-Garcia,* 27 Kan. App. 2d 439, 441, 8 P.3d 3 (1999), *rev. denied* 269 Kan. 939 (2000), the Court of Appeals found that a judge making a trial setting does not have to explicitly state that it is invoking the "crowded docket" provision in order for K.S.A. 22-3402(5)(d) to be applicable. However, in *Rodriguez-Garcia,* the court had announced that it did not have any dates open prior to the trial date it set, which was beyond the speedy trial limitation. Unfortunately, the record here does not support even an implicit determination that an earlier trial date was unavailable. To the contrary, the setting judge initially thought the matter was to be set for preliminary hearing. The exchange went as follows:

"THE COURT: . . . [A]ny objection to finding Mr. Edwards competent and returning him to the preliminary hearing [docket]?

"[DEFENSE]: No, not by the defense, Your Honor.

"[STATE]: No.

"THE COURT: I will make those findings and I will return Mr. Edwards to the preliminary hearing docket.

"[DEFENSE]: It should be jury trial docket.

"THE COURT: Jury trial docket. That would be October 1st, 2007, at 9:00 a.m. Anything further in this matter?

"[STATE]: No, Your Honor.

"[DEFENSE]: No, Your Honor. Thank You."

That record does not support the motion judge's speculation that the judge setting the trial date intended to invoke the "crowded docket" provisions of K.S.A. 22-3402(5)(d). Moreover, at the hearing on Edwards' motion to discharge, the State did not present any evidence to support the notion that, because of other cases pending for trial on August 10, 2007, when Edwards' trial was rescheduled, the earliest available trial date was October 1, 2007. See *State v. Adams*, 283 Kan. 365, 369, 153 P.3d 512 (2007) ("The State bears the responsibility for ensuring that the accused is provided with a speedy trial in accordance with K.S.A. 2006 Supp. 22-3402."). Therefore, we find that the district court's denial of Edwards' motion to discharge based upon a nonexistent "crowded docket" continuance under K.S.A. 33-3402(5)(d) was erroneous.

However, as noted, the district court also alluded to the justification for a court-ordered trial date extension set forth in K.S.A. 22-3402(5)(b). In that provision, the legislature apparently attempted to address the impact on a defendant's speedy trial right created by the suspension of criminal proceedings mandated by K.S.A. 22-3302(1) during competency proceedings. One might ponder on the simplicity of merely equating a suspension of criminal proceedings with a tolling of the speedy trial clock. Nevertheless, the legislature chose to provide that the time for trial may be extended beyond the subsections (1) and (2) limitations if "[a] proceeding to determine the defendant's competency to stand trial is pending and a determination thereof may not be completed within the time limitations fixed for trial by this section." K.S.A. 22-3402(5)(b). Then, if the defendant is subsequently found competent to stand trial, "the trial shall be scheduled within 90 days of such finding." K.S.A. 22-3402(5)(b).

As noted, at the time the district court ordered a competency evaluation, there were 36 days remaining on the revised 90-day limitation period, *i.e.*, exclusive of defendant's delays. The court's order directed that COMCARE submit its competency evaluation

report within 60 days. The defendant did not object to the continuance of at least 60 days, and we presume that the district court found that a determination of competency may not be completed within the 36 days remaining on the limitation period. Moreover, a continuance of 60 days to obtain a completed competency evaluation report was a reasonable period of time. *Cf.* K.S.A. 22-3302(3) (commitment to state institution for examination shall not exceed 60 days).

Edwards complains that the district court did not make a specific finding that a competency determination could not possibly be completed within the remaining 36 days. He also points out that the prosecutor delayed in making the referral to COMCARE, which then completed the evaluation report in 18 days, thereby proving that the competency determination could have been made in time to avoid an extension of the trial date. The State counters that when the referral oversight was discovered, COMCARE expedited the evaluation to comply with the court's 60-day order. We reject Edwards' reading of the statute. It uses the phrase, "may not be completed," rather than "cannot be completed." K.S.A. 22-3402(5)(b). A district court's estimate of the time necessary to obtain a completed competency evaluation will comport with the statute, so long as it is reasonable, notwithstanding what might be accomplished through a Herculean effort.

Here, the district court was reasonable in assessing the amount of time necessary to obtain a competency evaluation. Further, the length of continuance actually used to effect the ultimate competency determination was reasonable and within the statutory parameters. Therefore, according to K.S.A. 22-3402(5)(b), the trial was to be set within 90 days of the August 10, 2007, finding of competency. October 1 fell within that 90-day period. The district court did not err in denying Edwards' motion to discharge, albeit the reasons for that decision were incorrect. See *State v. Nash*, 281 Kan. 600, 602, 133 P.3d 836 (2006) (appellate courts will not reverse where district court reaches correct result, albeit for the wrong reason).

### SUPPRESSION OF DEFENDANT'S STATEMENTS

Next, Edwards asserts that the district court erred in denying his

motion to suppress the statements he made to law enforcement officers during their interrogation. First, Edwards contends that his demeanor during the interrogation was consistent with a person who is suffering a psychological episode precipitated by an untreated bipolar disorder. He invites us to find that such a person is incapable of making a free, voluntary, and knowing statement. Next, Edwards complains that the district court failed to independently view all of the videotape of the entire time that Edwards was in the interview room, which rendered the court's ruling incomplete.

*Standard of Review*

Notwithstanding Edwards' assertion that our review is de novo, we apply the familiar standard of review applicable to suppression motions.

" ' "When reviewing a district court ruling on a motion to suppress a confession, an appellate court reviews the factual underpinnings of the decision under a substantial competent evidence standard. The ultimate legal conclusion drawn from those facts is reviewed de novo. The appellate court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence.' " [Citations omitted.]" *State v. McMullen*, 290 Kan. 1, 4, 221 P.3d 92 (2009) (quoting *State v. Ransom*, 288 Kan. 697, 705, 207 P.3d 208 [2009]).

*Analysis*

Edwards correctly points out that the State has the burden to prove the voluntariness of a confession by a preponderance of the evidence, *i.e.*, that the statement was the product of the defendant's free and independent will. We often recite that the court considers the following nonexclusive factors based upon the totality of the circumstances: " ' "[T]he defendant's mental condition; the manner and duration of the interrogation; the ability of the defendant to communicate with the outside world; the defendant's age, intellect, and background; the fairness of the officers in conducting the interrogation; and the defendant's proficiency with the English language." ' " *McMullen*, 290 Kan. at 4 (quoting *Ransom*, 288 Kan. at 705-06).

The record reflects that Edwards was effectively advised of his *Miranda* rights and clearly waived those rights prior to making any

statements to the police. However, Edwards asserts that he suffered from bipolar disorder and was not taking his stabilizing medication, he had extreme anxiety, he was scared, he had not had anything to eat or drink all day, he had low average intelligence, and he was only 18 years old when he gave his statement to police. Therefore, Edwards argues that his statement was not the product of a rational intellect and free will, so that the district court should have suppressed the statement as being involuntary.

The district court's ruling indicates that it clearly took into account all of the facts which Edwards recites, as well as the factors which were relevant. The court had "no doubt that Mr. Edwards was upset that night, he had emotions where he was crying, he was clearly upset about the fact of being arrested, I think he was upset about the circumstances of what was going on." However, the court was equally convinced that Edwards "was familiar with the system, he had apparently been through the system before, he knew what was going on"; that Edwards' familiarity with the system offset his young age; that Edwards "wanted to give his side of the story in the hopes that it would exonerate him in some fashion"; and that "he very much wanted to talk to the police." The court found that the detective did not threaten or promise anything and that his questioning was not coercive. Likewise, the court opined that the length of the interview was not unusual under the circumstances. Accordingly, the district court found that Edwards' statement was voluntary; it was knowingly made; and it was freely given. We agree.

In challenging the district court's ruling, Edwards relies heavily on his prior diagnosis of bipolar disorder. The detective testified at the suppression hearing that Edwards said he had been diagnosed as bipolar a couple of years previously and had been prescribed a number of medications, including fluoxetine, lithium, and Abilify. However, Edwards told the detective that he was not currently taking the medications, that he did not need the medications, and that he was fine without the medications. Edwards presented no evidence, or even argument, at the suppression hearing to refute his prior statement that his bipolar condition was fine without medications. Likewise, Edwards presented no evidence to establish how bipolar disorder might affect the voluntariness of a sufferer's

statements to police. The only psychological evidence to be presented at the suppression hearing was the COMCARE evaluation report on Edwards' competency to stand trial, which was offered by the prosecutor. That report corroborated Edwards' prior diagnosis, but it did not address Edwards' condition on the date of the detective's interview. Rather, the report dealt with Edwards' condition on the date of the evaluation, which condition was determined to be that he was competent to stand trial.

Edwards attempts to rectify that fatal omission by enlisting this court to serve as a mental health expert. In a purported Supreme Court Rule 6.09 (2009 Kan. Ct. R. Annot. 47) letter of additional authority, Edwards recites from the American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV), listing the symptoms used to diagnose when a bipolar disorder sufferer is experiencing a major depressive episode. Edwards suggests that we can look at what the record tells us about his behavior before and during the interview and, using the DSM-IV as our guide, make the diagnosis that he was suffering a major depressive episode during the interview. Then, Edwards apparently expects us to use our nonexistent mental health expertise to opine that a person with bipolar disorder who is suffering a major depressive episode cannot freely, voluntarily, and knowingly give a statement to the police. We decline the invitation to step outside our role as an appellate court. See *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 (2009) (appellate courts do not make factual findings but review those made by district courts).

Edwards also finds fault with the district court for failing to view all of the videotape which the police had made of Edwards' time in the interrogation room. Edwards notes that portions of his interview were available on three media: a compact disc (CD) containing an audio recording of the actual interrogation; a written transcript of the CD; and a videotape of all of the interaction between Edwards and the detective, including portions not captured on the CD. In ruling on the suppression motion, the district court noted that it had viewed a portion of the videotape to observe Edwards' demeanor, but that it was unable to hear the conversations. Edwards contends that the audio problems with the video-

tape resolved later in the recording, which he believes establishes that the district court only viewed a small portion of the videotape. Then, Edwards argues that the unviewed portion of the videotape contains visual evidence which was critical to any determination based upon the totality of the circumstances, so that the district court's decision based upon an incomplete review of the evidence was invalid.

Edwards' theory—that a totality of the circumstances decision requires the court to review all of the evidence—might be more persuasive if the videotape had been admitted into evidence at the suppression hearing. At that hearing, the State called Detective Robert Chisholm to testify about his interrogation of Edwards. During the detective's testimony, the State offered the written transcript of the interrogation. The defense argued that the CD from which the transcript was prepared should also be admitted. The court admitted both the transcript and the CD. Neither side proffered the videotape. At the conclusion of the detective's testimony, defense counsel stated:

"Judge, my request of the Court would be for you to listen to the CD before making a determination about my client's emotional and mental state, since that's been admitted as part of the record, and take it under advisement and rule on it on Monday. That way you'll have a clear picture of my client's demeanor and behavior during the recitation of his rights, to determine if it was knowing and voluntary."

The court granted the defense request to take the matter under advisement over the weekend and to listen to the CD. When the court announced its ruling on Monday, the defense did not object to the procedure employed by the court and did not proffer additional evidence to contradict or impeach that evidence which had been admitted at the suppression hearing. Edwards' after-the-fact complaint about the evidentiary value of the videotape is simply unavailing.

In conclusion, we find that the district court's factual findings are supported by substantial competent evidence, and we affirm its legal conclusion that Edwards' statements were freely and voluntarily given.

## PHOTOGRAPHS

Edwards complains about the court's admitting five photographs: two autopsy photographs of the bullet wound in the victim's heart; front and back photographs of the victim's bloody shirt; and a postmortem photograph of the victim's face. Edwards argues that the cause and manner of death were not in dispute, so that the photographs had no relevant purpose. The State responds that it acted with "admirable restraint" in choosing to offer only 5 of the 94 available photos.

*Standard of Review*

When reviewing the admission of photographic evidence, an appellate court's first step is to determine whether the photographs are relevant. The decision to admit photographs alleged to be overly repetitious, gruesome, or inflammatory, *i.e.*, prejudicial, is reviewed for an abuse of discretion. *State v. Riojas*, 288 Kan. 379, 387, 204 P.3d 578 (2009); *State v. Sappington*, 285 Kan. 176, 196, 169 P.3d 1107 (2007). The party who challenges that decision bears the burden of showing such abuse. *Sappington*, 285 Kan. at 196. Admission of photographs that are unduly repetitious and cumulative, or that are introduced solely for a prejudicial purpose, constitutes an abuse of discretion, albeit such a finding is rare in a murder case. *Sappington*, 285 Kan. at 195.

*Analysis*

With respect to the autopsy photographs of the victim's heart and the photographs of the victim's shirt, the State argues that they supported the stipulated coroner's report and served to assist the jury to "see the path of the bullet with their own eyes." In that regard, the State points to *State v. Hickles*, 261 Kan. 74, 85, 929 P.2d 141 (1996), where this court held:

"Even where the defendant concedes the cause of death, the prosecution has the burden to prove all the elements of the crime charged; and photographs to prove the elements of the crime, including the fact and manner of death and the violent nature of the crime, are relevant and admissible. [Citations omitted.] Photographs depicting the extent, nature, and number of wounds inflicted are generally relevant in a first-degree murder case."

See also *State v. Decker*, 288 Kan. 306, 309, 202 P.3d 669 (2009) (even when cause of death undisputed, autopsy photo of a child's brain admissible to show time when the abuse occurred); *State v. Carter*, 284 Kan. 312, 329, 160 P.3d 457 (2007) ("[w]e recognize the cause and means of death were not at issue in this case; still, the photograph was relevant" to show size of living space, and context of diagrams).

The admission of autopsy photographs to assist in understanding a pathologist's testimony is a widely accepted practice. See *State v. Smallwood*, 264 Kan. 69, 83-84, 955 P.2d 1209 (1998) (photos used to corroborate witness testimony OK even though photos may appear gruesome); *State v. Stone*, 253 Kan. 105, 110-11, 853 P.2d 662 (1993) (photographs of severed arm and hand were properly used to corroborate witness testimony and were relevant to the pathologist's testimony as to cause of death); *State v. Randol*, 212 Kan. 461, 466, 513 P.2d 248 (1973) (admitted in conjunction with pathologist's report); but *cf. State v. Boyd*, 216 Kan. 373, 378, 532 P.2d 1064 (1975) (finding some admitted photographs could have been helpful to show jury the angle of penetration of the murder instrument into the deceased's body, but reversible error to offer repetitious exhibits to prove the same point).

A possible distinction in this case was that the coroner who performed the autopsy did not testify in person. Rather, the parties stipulated to the coroner's written opinion on cause of death which was read to the jury. Nevertheless, the photographs of the victim's heart and shirt were arguably useful to the jury in understanding the written opinion. Moreover, the relatively few photographs offered cannot be characterized as cumulative and repetitious. Likewise, given the nature of the crime, the autopsy photographs are not particularly gruesome, and the shirt photographs are relatively benign. The trial court did not err in admitting those photographs.

The other challenged photograph depicted the victim's face. The State contends that the photograph was necessary to provide identification of the victim. One might ruminate on the general relevance of a murder victim's identity. All the State must prove is that the defendant killed a human being; the crime of murder is the same even if the victim is a "John or Jane Doe." Nevertheless, we

have approved of victim identity as a valid reason for the admission of photographs. See *Riojas*, 288 Kan. at 387 ("pictures were introduced for legitimate purposes of identification"); *State v. Clark*, 261 Kan. 460, 478, 931 P.2d 664 (1997) (same); *State v. Campbell*, 210 Kan. 265, 275-76, 500 P.2d 21 (1972) ("Photographs admitted for the purpose of identifying the victim . . . are relevant and admissible."). Moreover, in this case, the single photograph of the victim's face had no appreciable impact on the outcome of the trial. See *State v. Walker*, 239 Kan. 635, 644, 722 P.2d 556 (1986) (applying harmless error to erroneously admitted photograph).

In conclusion, we find that the admission of the five photographs was not reversible error.

## JURY INSTRUCTIONS

Edwards challenges two of the district court's jury instructions. He contends the court should have added his requested language to the aiding and abetting statute. Likewise, he argues that the limiting instruction on the use of K.S.A. 60-455 evidence listed material facts which were inapplicable or undisputed.

### Standard of Review

"In general, when considering the refusal of the trial court to give a specific instruction, the evidence is viewed in the light most favorable to the party requesting the instruction. [Citation omitted.] In cases where a defendant objects to instructions, this court is required to consider the instructions as a whole and not isolate any one instruction. [Citation omitted.] ' " 'If the instructions properly and fairly state law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous.' " ' [Citations omitted.]" *State v. Davis*, 283 Kan. 569, 581, 158 P.3d 317 (2007).

### Analysis

#### Aiding and Abetting

Appellant raises the familiar argument that the district court erred by declining to add the following language to the aiding and abetting instruction at trial: "Mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime are themselves insufficient to establish guilt as an aider

and abettor." *State v. Green*, 237 Kan. 146, Syl. ¶ 4, 697 P.2d 1305 (1985).

Edwards contends that the additional language was necessary because of his theory of defense, which was that he merely accompanied the others to the victim's house to buy marijuana without any knowledge of the robbery plan. Obviously, the requested language, which is the law in this State, precisely fit the defense theory and perhaps the better practice would have been to modify the patterned instruction accordingly.

Nevertheless, this court has repeatedly held that juries are presumed to intuit from the word "intentionally" in the patterned instruction that proof of mere association or presence would be insufficient to convict. See, *e.g.*, *State v. Hunter*, 241 Kan. 629, 639, 740 P.2d 559 (1987); *Davis*, 283 Kan. at 582-83. Based on that precedent, we decline to find that the district court's refusal to add the requested language to the patterned instruction on aiding and abetting was reversible error.

At the instructions conference, defense counsel acknowledged that evidence Edwards used marijuana on the day of the crime was necessary for the defense theory and stated: "I don't know if I need a limiting instruction." Nevertheless, the defense argued about the material facts which should be included in the limiting instruction. Ultimately, the district court instructed the jury that it could consider evidence tending to prove the defendant committed another crime "solely for the purpose of proving the defendant's motive, opportunity, intent, plan, knowledge, and absence of mistake or accident."

On appeal, Edwards argues why each of the listed facts should not have been included in the limiting instruction. He then argues that the limiting instruction was confusing and misleading to the jury. Apparently, Edwards believes that he would have benefited from having no limitation on how the jury used the evidence of his marijuana consumption. We disagree.

Although the instruction arguably included more facts than were warranted by the evidence in this case, it did serve the purpose of instructing the jury that it could not infer guilt merely because of Edwards' disposition to commit crimes. Moreover, the jury could

not have been misled or confused about the role that marijuana played in this case. Edwards repeatedly argued that he was at the victim's house solely to purchase marijuana, not to commit a robbery. Any error in the overbroad limiting instruction did not prejudice Edwards and was harmless beyond a reasonable doubt. See *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009) (errors not affirmatively causing prejudice to substantial rights of defendant do not require reversal).

### CUMULATIVE ERROR

Appellant argues that even if the errors alleged on appeal do not individually support reversal, the cumulative effect of those errors denied him a fair trial. This court evaluates cumulative error claims by determining "whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant." *State v. Ellmaker*, 289 Kan. 1132, Syl. ¶ 12, 221 P.3d 1105 (2009).

Granted, a cumulative error analysis is to some degree subjective. Nevertheless, we are firmly convinced that Edwards received a fair trial, even if one were to accept his claims of error. Accordingly, we affirm his conviction.

Affirmed.

DAVIS, C.J., not participating.

PHILIP C. VIEUX, District Judge, assigned.