NOT DESIGNATED FOR PUBLICATION

No. 120,643

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANNY W. QUEEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed July 2, 2020.
Convictions reversed, sentences vacated, and case dismissed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., WARNER, J., and WALKER, S.J.

PER CURIAM: We are today obligated to reverse the convictions of Danny W. Queen for second-degree murder and two other violent felonies because the Douglas County District Court failed to begin his jury trial within the time limits the Kansas Legislature has established. As a result of this violation of Queen's speedy-trial rights under K.S.A. 2019 Supp. 22-3402, the charges must be dismissed, and Queen cannot be retried. That is the legislatively mandated remedy.

1

The record on appeal shows the district court miscalculated the 150-day speedy trial deadline, so Queen's jury trial had been scheduled to begin 3 days too late. The morning the trial was to start, Queen's lawyer moved to dismiss the case under K.S.A. 2019 Supp. 22-3402(a). The prosecutor objected. The district court held several hearings before denying the motion and proceeding with the jury trial. The district court concluded an exception permitting a 30-day continuance to accommodate other trials applied and, in any event, Queen's lawyer acquiesced to the original trial setting outside the 150-day period. The record and the law support neither purported basis for denying Queen's motion to dismiss. No other exceptions to the statutory speedy-trial requirement apply.

On appeal, Queen renews the claim that his statutory right to a speedy trial was violated and also argues errors during the jury trial tainted the verdicts. Because we must reverse the convictions for the speedy trial violation, we do not consider the asserted trial errors.

FACTUAL AND PROCEDURAL BACKGROUND

Given how we must decide Queen's appeal, we necessarily focus on the speedy-trial chronology and the relevant discussions in the district court. Although the facts about the charged crimes as portrayed in the evidence presented to the jury are disturbing—like most circumstances involving violent deaths—they have no direct legal bearing on the speedy-trial issue. We offer an overview for some context.

As part of an extended and alcohol-fueled birthday celebration on June 23, 2017, Queen wound up at D-Dubs, a bar in Eudora, shortly before midnight. Queen decided a female bartender was not attending to his drink request quickly enough and unleashed a profane tirade. Bo Hopson, a member of bar's security crew, along with several other men escorted Queen outside. The group began scuffling. Queen pulled out a pistol and shot Hopson twice. He then attempted to shoot another man, but the pistol misfired. Hearing

2

the shots, another bar patron approached the area, and Queen pointed the pistol at him. The gun again misfired. Several patrons then swarmed Queen and beat him into unconsciousness. Law enforcement officers arrived shortly after Queen had been subdued and arrested him. Hopson, who had been shot in the chest, was transported to an area hospital. He died the next day.

On June 26, 2017, the Douglas County District Attorney's office charged Queen with premeditated first-death murder for the fatal shooting of Hopson and two counts of attempted first-degree murder for trying to shoot the other two men outside the bar. The district court set a $1 million bond for Queen. He was unable to post the bond and remained in jail from the time of his arrest through the week-long jury trial in July 2018. The jury convicted Queen of intentional second-degree murder for the death of Hopson, one count of attempted second-degree murder, and one count of attempted voluntary manslaughter. The district court later sentenced Queen to a controlling term of 226 months in prison with postrelease supervision for 36 months.

With that overview, we now examine in detail how the speedy-trial violation unfolded after Queen had been charged.

The district court held a preliminary hearing on October 24, 2017, and bound Queen over on all three charges. At the close of the hearing, the court instructed the lawyers to "start thinking about available trial dates and if there's any discussion about how much time might be needed." The prosecutor said she needed to check with witnesses and family members about their availability and asked, "So we're looking probably at February, March?" The court responded, "Yes."

Queen's arraignment took place one week later, on October 31, 2017. Queen pleaded not guilty to all charges. Under K.S.A. 2019 Supp. 22-3402(a), a defendant's arraignment starts the speedy trial time. The State then has 150 days to bring a defendant

3

being held in jail to trial. The district court discussed scheduling the trial with the lawyers. The prosecutor volunteered that "the week of March 19th is the spring break, both for KU and for Lawrence public schools," and noted that she generally avoided those dates "because of the difficulty with witnesses." The following exchange then occurred:

"THE COURT: Speedy trial would run April 30th?
"[THE STATE]: Yeah.
"THE COURT: Spring break again is when?
"[THE STATE]: March 19th, which is a Monday.
"THE COURT: Counsel, will you check your availability for April 2nd that week[?]
"[THE STATE]: That's fine with the State.
"[DEFENSE COUNSEL]: Monday, April 2nd? That works for defense, Your Honor.
"THE COURT: Okay."

The court scheduled the trial for a full week beginning Monday, April 2, 2018. That was the first trial setting in the case. The court and the parties then worked backward from that date, scheduling a status conference for March 16, a motions hearing for February 23, and a January 31 deadline for filing any pretrial motions.

April 2, 2018, was the 153rd day after Queen's arraignment. As we have said, that morning Queen moved to dismiss the charges under K.S.A. 22-3402(a) because his statutory speedy-trial right had been violated. The statutory language governing that right states in part:

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within 150 days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged." K.S.A. 2019 Supp. 22-3402(a).

4

Consistent with this statutory mandate, Queen simply asserted the case must be dismissed because the trial was set to start three days past the deadline and no exceptions applied to alter that time calculation.

The district court released the potential jurors and held an initial hearing on Queen's motion. The State argued that although more than 150 days had passed since Queen's arraignment, there were several reasons why the trial could proceed. In particular, the State argued that K.S.A. 2019 Supp. 22-3402(e)(4) allowed the court to extend the statutory speedy-trial deadline by 30 days "because of the court's calendar." This provision, often called the crowded-docket exception, allows for a one-time, 30-day extension of the speedy-trial deadline when, "because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the [150-day timeframe]." K.S.A. 2019 Supp. 22-3402(e)(4); see *State v. Edwards*, 291 Kan. 532, 543, 243 P.3d 683 (2010) (referring to the subsection as the "'crowded docket' provisions" of the speedy trial statute).

After reviewing the transcript from the arraignment, the prosecutor acknowledged that neither side had requested or received a continuance of the original trial date. But the prosecutor reiterated the State's position that the crowded-docket exception applied. The State also argued that Queen, through his lawyer, acquiesced to the April 2 trial and waived his right to a speedy trial by consenting to that date, continuing to file motions, and participating in pretrial hearings without raising the speedy-trial question.

The district court ultimately denied Queen's motion. The district court acknowledged its error at arraignment in stating that April 30 was the speedy-trial deadline—an error the State immediately ratified. But the district court also faulted Queen's lawyer for not correcting the error:

5

"[W]hen the court mentioned April 30th as a speedy trial time, neither side corrected the court. Both counsel have a duty of candor towards the tribunal and should not allow the tribunal to be misled by false statements of law or fact. And usually that candor is when another attorney may be misrepresenting something or maybe a client is misrepresenting something. But an advocate does have a duty to disclose adverse authority. Here, neither side corrected the court."

The district court also concluded the crowded-docket exception allowed it to extend Queen's speedy-trial period by 30 days. The district court acknowledged it "did not make a record while setting this trial that the court's calendar was full." Nevertheless, the district court found that "it was, which is why we went out as far as we did"—that is, "it [was] implicit that this court's calendar was full." At the same time, the district court offered that if it had "known . . . we were going outside the 150 days," it "would have moved cases to fit it in."

We now turn to our discussion of the controlling legal issue and explain why Queen's statutory speedy trial rights were violated.

DISCUSSION

K.S.A. 2019 Supp. 22-3402(a) mandates that a defendant held in jail on criminal charges "be brought to trial within 150 days after such person's arraignment." Otherwise, the defendant "shall be entitled to be discharged from further liability" for the charged offenses. K.S.A. 2019 Supp. 22-3402(a); see *State v. Brownlee*, 302 Kan. 491, 503, 354 P.3d 525 (2015). The State bears the legal obligation to ensure a defendant is brought to trial within this statutory deadline, and a defendant need not take any affirmative action to ensure these speedy-trial rights are honored. *State v. Dupree*, 304 Kan. 43, 49, 371 P.3d 862 (2016).

The statute provides various exceptions that toll this deadline. If the defendant requests and receives a continuance of the trial date, that time does not count toward the 150-day speedy-trial period. Likewise, a delay attributable to the "fault of the defendant" does not count.  K.S.A. 2019 Supp. 22-3402(a). And a different deadline may apply if a defendant fails to appear at the trial or any pretrial hearing (requiring a bench warrant) or is found incompetent to stand trial, or if material evidence is unavailable and may be reasonably procured. See K.S.A. 2019 Supp. 22-3402(d), (e)(1)-(3). Everyone agrees none of those exceptions applies here.

Relevant here, the statute also permits "[n]ot more than one continuance of not more than 30 days" if, "because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the [statutory speedy-trial period]." K.S.A. 2019 Supp. 22-3402(e)(4). This is the "crowded docket" exception. The crowded-docket rationale cannot be applied retroactively to legally justify a trial delay. Rather, it must be based on findings made by the district court before the expiration of the speedy-trial period. *State v. Crawford*, 46 Kan. App. 2d 401, 408, 262 P.3d 1070 (2011); see also *State v. Cox*, 215 Kan. 803, 805, 528 P.2d 1226 (1974) (exceptions to the speedy-trial statute must be found within the statutory speedy-trial period). For this reason, good practice calls for the district court to identify on the record the crowded-docket exception in continuing a trial date and to explain at least briefly the other matters taking precedence on the calendar. Otherwise, the record must support "an implicit determination that an earlier trial date was unavailable" for the exception to apply. See *Edwards*, 291 Kan. at 542 (citing *State* v. *Rodriguez-Garcia*, 27 Kan. App. 2d 439, 441, 8 P.3d 3 [1999]).

A district court's ruling involving a defendant's speedy-trial rights often involves factual and legal disputes. For example, whether a defendant acquiesced to a delay is a factual question; we uphold a district court's factual findings when they are supported by substantial competent evidence. *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446

7

(2009). But appellate courts give no deference to a district court's interpretation of K.S.A. 22-3402. 288 Kan. at 143. And whether a trial setting violated a defendant's statutory right to a speedy trial is a question of law we review de novo. 288 Kan. at 143.

Queen's arraignment occurred on October 31, 2017. The parties agree that the court scheduled Queen's trial to begin on April 2, 2018—the 153rd day after his arraignment. The parties also agree that because Queen was held in jail throughout his case, the 150-day speedy-trial period in K.S.A. 2019 Supp. 22-3402(a) governs. Thus, unless an exception applied, the State had until March 30, 2018, to bring Queen to trial. If not, the statute required the case to be dismissed with prejudice. The district court found two exceptions brought the April 2 date within the speedy-trial period: (1) The crowded-docket exception allowed an additional 30 days to bring Queen to trial, placing the April 2 setting within this 30-day grace period. And (2) Queen had acquiesced to the April 2 trial when his counsel indicated at the arraignment that date was available without notifying the court that it was beyond the statutory speedy-trial period.

On appeal, the State acknowledges that the district court did not make an explicit crowded-docket finding before April 2. That is, the district court did not indicate when it scheduled Queen's trial that it picked that date because it did not "have sufficient time to commence the trial of the case" within the 150-day speedy-trial period. See K.S.A. 2019 Supp. 22-3402(e)(4). Instead, the State argues that the district court explained at the hearing on Queen's motion to dismiss that its implicit reason for scheduling the trial on that date was its caseload. The argument is unpersuasive both factually and legally.

The State argues the district court's crowded-docket finding is consistent with our opinions in *State v. Dean*, 42 Kan. App. 2d 32, 208 P.3d 343 (2009), and *Rodriguez-Garcia*, 27 Kan. App. 2d at 441. We disagree. Both *Dean* and *Rodriguez-Garcia* involved implicit findings that the crowded-docket exception applied. But in each case, the record clearly demonstrated that the district court's reason for choosing the challenged trial

8

date—at the time that date was selected—was the court's scheduled caseload. The record here not only fails to implicitly support a crowded docket, it readily shows just the opposite.

In *Dean*, a series of continuances by the State and the court delayed the defendant's trial until the eleventh hour of the speedy-trial timeframe. The record established the presiding judge had already scheduled another case on the last day remaining in the speedy-trial period. See 42 Kan. App. 2d at 35-36. Based on these facts, the district court found—and this court affirmed—that the last continuance made at the end of the speedy-trial period and scheduling the trial within the next 30 days satisfied the crowded-docket exception. 42 Kan. App. 2d at 36, 38.

Similarly, in *Rodriguez-Garcia*, the district court explained when scheduling the defendant's trial date that there were no available trial settings until after the expiration of the statutory speedy-trial deadline. On appeal, this court stated it could not "ignore the clear and reasonable implications from the district court's statement" and concluded the crowded-docket exception effectively extended the defendant's speedy-trial deadline by 30 days. 27 Kan. App. 2d at 441.

In contrast, the record in this case does not suggest that Queen's trial was scheduled for April 2 due to the court's trial schedule and caseload. At the close of the preliminary hearing, for example, the prosecutor observed that this trial would need to be scheduled for "probably . . . February, March"—times within the statutory speedy-trial period—and the district court agreed. The district court said nothing to indicate its caseload would preclude a trial either month. The district court's stated purpose was to have the lawyers look at their calendars in advance of the arraignment, so they would come well prepared to agree on a trial date. Identifying February and March as a general timeframe for the trial would have made no sense if the district court's docket had already rendered those months unrealistic. When the lawyers and the district court did schedule

9

the trial at the arraignment a week later, the prosecutor observed that she would like to avoid the week of spring break (also in March) to avoid conflicts with witnesses. The district court never suggested the concern was unwarranted because its docket would not permit a trial until the beginning of April.

Rather, the record shows the district court scheduled the trial for April 2 because the court incorrectly believed—and the prosecutor incorrectly confirmed—that the speedy-trial deadline was April 30, not March 30. It is unclear whether the reason for this error was a miscalculation of the 150-day timeframe or a mistaken belief that a different limitations period (such as the 180-day timeframe for defendants released on bond under K.S.A. 2019 Supp. 22-3402[b]) applied. Regardless, the district court did not schedule the trial outside the 150-day timeframe due to its overcrowded docket. It did so because it erroneously believed that the April 2 trial date was within the speedy-trial period under K.S.A. 2019 Supp. 22-3402. The district court's attempt to retroactively justify that decision through the crowded-docket exception cannot be supported in the record. See *Edwards*, 291 Kan. at 542; *Cox*, 215 Kan. at 805.

As a matter of statutory construction, we doubt a district court can invoke the crowded-docket exception in K.S.A. 2019 Supp. 22-3402(e) to initially set a trial date up to 30 days past what would otherwise be the speedy-trial deadline. That is what the district court effectively tried to do here. The exception specifically refers to a one-time *continuance* of up to 30 days. The term "continuance" commonly means a change in a fixed date to a later date—not an original setting. See Black's Law Dictionary 400 (11th ed. 2019) (in context of procedure, "continuance" defined as "[t]he adjournment or postponement of a trial or other proceeding to a future date"); cf. *State v. Diaz*, 44 Kan. App. 2d 870, 877, 241 P.3d 1018 (2010) ("a continuance means that a new trial date is set"). We have no reason to infer the legislature imputed some idiosyncratic meaning to the word in K.S.A. 2019 Supp. 22-3402(e). See *Midwest Crane & Rigging, LLC v.*

10

*Kansas Corporation Comm'n*, 306 Kan. 845, 850, 397 P.3d 1205 (2017) ("common words" in statute should be given their "ordinary meaning").

The speedy-trial statute, then, generally requires an initial trial setting within the designated time period of 150 or 180 days, depending on the defendant's custodial status. The district court may then adjust—i.e., continue—that setting to accommodate a defense request for more time to prepare, a determination of a defendant's competency, or a crowded docket. But a district court cannot initially schedule a trial for an in-custody defendant more than 150 days after the arraignment because of a crowded docket.

The district court also found that Queen *acquiesced* to scheduling the trial outside the speedy-trial period—thereby waiving his statutory right—when his lawyer indicated his availability for an April 2 trial and failed to correct the district court's speedy-trial miscalculation. To show acquiescence in the speedy-trial context, the State must prove "'more than mere passive acceptance'" by the defendant. *Brownlee*, 302 Kan. at 507 (quoting *Vaughn*, 288 Kan. at 145). Instead, the State "'must produce some evidence of agreement to the delay by the defendant or defense counsel. The record must support a conclusion that the defendant expressly or impliedly agreed to the delay.'" *Brownlee*, 302 Kan. at 507 (quoting *Vaughn*, 288 Kan. at 145). Defense counsel's actions and acquiescence are attributable to the defendant for purposes of the defendant's statutory speedy-trial rights. See *State v. Bloom*, 273 Kan. 291, 310, 44 P.3d 305 (2002).

When scheduling the trial at Queen's arraignment, the district court asked the prosecutor whether the speedy-trial deadline expired April 30. The prosecutor (erroneously) agreed; the district court did not ask Queen or his lawyer, and neither of them volunteered additional information. The district court then addressed both parties and asked about their availability the week of April 2. The prosecutor indicated that was "fine for the State"; Queen's lawyer stated that date "works for the defense."

11

The State contends that Queen "actively agreed to a date outside the speedy-trial deadline" while "let[ting] the district court continue to operate on its [erroneous speedy-trial calculation] until the morning of trial." Queen responds that "merely stating that a proposed trial date 'works for the defense' is not acquiescence" and that the defendant has no obligation to notify the State of a possible speedy-trial problem. Rather, it is the State's exclusive duty to ensure a defendant is brought to trial consistent with K.S.A. 2019 Supp. 22-3402. Kansas Supreme Court precedent supports Queen's position.

*State v. Adams*, 283 Kan. 365, 367-68, 153 P.3d 512 (2007), presented an analogous set of circumstances. There, the defendant's trial was initially set within the statutory speedy-trial period, but it was continued several times for reasons outside the defendant's control. At the hearing on the final continuance, the district court suggested—and defense counsel indicated that he was available for—a trial date outside the statutory speedy-trial period. On the trial date, Adams moved to dismiss the case as a violation of his statutory right to a speedy trial.

The Kansas Supreme Court found the trial violated Adams' speedy-trial right under K.S.A. 2006 Supp. 22-3402. And the court rejected the State's argument that defense counsel's agreement to the eventual trial date equated to acquiescence or waiver:

> "The State did not request an earlier setting, and Adams' defense counsel did not object to starting the trial on August 18, 2004. Although Adams' defense counsel accepted the August 18, 2004, trial setting, his acceptance is neither an acquiescence to a continuance nor the equivalent of a waiver of Adams' statutory right to a speedy trial. The State, not Adams, was responsible for ensuring that Adams was tried before the statutory speedy trial deadline expired." 283 Kan. at 370.

Applying *Adams'* reasoning here, defense counsel's statement that he was available for a trial on April 2 does not equate to Queen acquiescing to a continuance or waiving his speedy-trial right. Indeed, no continuances were requested by any party or by the

12

court before the April 2 trial date. See *Bloom*, 273 Kan. at 310 ("A defendant may waive the statutory right to speedy trial by requesting or acquiescing in the grant of a continuance."). And though the court indicated that Queen was not "prejudiced" by the delay from March 30 to April 2, a defendant's statutory right to a speedy trial under K.S.A. 2019 Supp. 22-3402 does not require a showing the defendant was otherwise harmed by a delay. See *Adams*, 283 Kan. at 370.

The statute unambiguously directs that a person who is not brought to trial within the required speedy-trial period "shall be entitled to be discharged from further liability to be tried for the crime charged." K.S.A. 2019 Supp. 22-3402(a). The remedy is strong medicine, since it undoes any conviction obtained in a trial impermissibly held after the statutory deadline and precludes any further prosecution of the defendant on those charges. See *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014); *Adams*, 283 Kan. at 366. The obvious alternative remedy of dismissing the charges without prejudice, permitting the defendant to be prosecuted anew, would give the State little incentive to press for compliance. A speedy-trial violation then would impose no more than a bureaucratic hitch in the prosecution of the defendant, simply requiring the State to draft and file a new charging instrument.

Finally, the district court found Queen's attorney had an affirmative obligation to correct the district court's mistake—and in failing to correct the error, he surrendered his client's right to a speedy trial. The court ventured that "[b]oth counsel"—that is, the prosecutor and the defense attorney—"have a duty of candor towards the tribunal and should not allow the tribunal to be misled by false statements of law or fact." This statement misconstrues the Kansas Rules of Professional Conduct (KRPC) in coming to an untenable conclusion that is inconsistent with Kansas law.

KRPC 3.3 governs an attorney's ethical duty of candor to the court and states in relevant part that lawyers may not "knowingly" make "false statement[s] of fact or law"

13

(or fail to correct their previous material false statements); fail to disclose controlling legal authority directly adverse to their clients' positions; or offer false evidence. KRPC 3.3(a) (2020 Kan. S. Ct. R. 353). Comment 2 to that Rule explains that although a lawyer "must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false," an attorney "in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted." KRPC 3.3, Comment 2 (2020 Kan. S. Ct. R. 354). Apart from disclosing controlling legal authority, the Rule imposes no affirmative duty on lawyers in adversary proceedings to advise or inform a court in the first instance. But when lawyers do advise or inform the court, they must act in good faith and refrain from knowingly making false factual or legal representations. And if they learn they or their clients have made false representations, they have a duty to correct the representation or otherwise "take reasonable remedial measures." KRPC 3.3(a)(3). (The other "reasonable measures" may come into play when a client directly makes false factual representations to the court in an affidavit or in testimony.)

Rule 3.3, a cornerstone of the integrity of the judicial process, would prohibit an attorney from affirmatively misleading a district court by knowingly stating a wrong statutory speedy-trial window applies. See KRPC 3.3(a)(1). But remaining silent when the State erroneously agrees with the district court that the speedy-trial period expires April 30 is not the same as knowingly making a false statement of law or fact. This is particularly true in light of Kansas' longstanding recognition that a defendant has "no obligation to take affirmative action" to protect his or her speedy-trial right. *State v. Sievers*, 299 Kan. 305, 307-08, 323 P.3d 170 (2014). The district court's misstatement of a defense lawyer's duty of candor would undercut the entirely proper functioning of the adversarial process in a criminal case.

The obligation to bring a case to trial within the statutory speedy-trial period rests solely with the State. 299 Kan. at 307. A defendant need not take any affirmative steps to

protect that right. 299 Kan. at 307-08. It was the State's responsibility to accurately determine Queen's speedy-trial deadline and ensure the trial was held before that date. Queen's lawyer had no duty to alert the district court to the looming speedy trial violation. The consequences of the failure to correct the district court's error must be attributed to the State alone. The district court erred when it denied Queen's motion to dismiss on statutory speedy-trial grounds.

The State failed to bring Queen to trial within 150 days of his arraignment. As a result, K.S.A. 2019 Supp. 22-3402(a) directs that this case must be dismissed. Based on that statutory mandate, we reverse Queen's convictions, vacate his sentences, and dismiss the charges against him with prejudice. In light of this disposition, we need not address Queen's other contentions on appeal.

Convictions reversed, sentences vacated, and case dismissed.