No. 48,283

STATE OF KANSAS, *Appellant,* v. WILLIAM ARLES YOUNGBLOOD, *Appellee.*

(556 P. 2d 195)

Opinion filed November 6, 1976.

*Michael G. Moroney,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, and *Michael B. Rees,* assistant attorney general, were with him on the brief for the appellant.

*Richard G. Tucker,* of Fleming & Forsyth, of Erie, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is an interlocutory appeal by the prosecution pursuant to K. S. A. 22-3603 and Rules of the Supreme Court, Rule No. 17 (214 Kan. xxxiii). The appeal is from an order suppressing the use of quantities of marijuana and cocaine as evidence in the prosecution of William Arles Youngblood for possession of such controlled substances after having been previously convicted of the possession of marijuana. These controlled substances were suppressed by the district court on a finding that they were illegally seized in an unlawful general exploratory search of a house without first obtaining a search warrant.

The state contends these controlled substances were lawfully seized without the necessity of a search warrant. The reasoning employed to reach this conclusion is that the officers were lawfully in the house to execute an arrest warrant on Youngblood, that while in the house they perceived the controlled substances which

were in plain view and that the officers were justified in seizing the drugs at that time because of exigent circumstances.

The appellee Youngblood accepts the premise that the officers were lawfully on the premises to execute a warrant for his arrest. However, he asserts the drugs were not in plain view of the officers making the arrest and were discovered and seized in a general exploratory search of the house without a search warrant and without exigent circumstances to justify a failure to obtain a search warrant.

The trial court in suppressing this evidence did not make a finding that the drugs were in plain view of the officers making the arrest. Indirectly it found that the drugs were not in plain view by holding:

". . . I do feel that the search was unlawful. Especially, in respect to the house and going through and picking up this evidence. I think, as I understand the evidence, Youngblood was arrested immediately after the Officer Donaldson entered the house, and he was under control and they were searching him. Anything that happened after that time, in so far as inspecting the house, I do feel is unlawful in the holding of the Chimel case and the cases following it. . . ."

The testimony as to the location of the drugs and whether they were in plain view of the officers was conflicting. There was testimony that the pan of marijuana was under a living room chair with four inches of clearance and not in plain view. The testimony was that the balance of the drugs was found in an unlighted bathroom located some distance from the room in which the arrest was made. There was much additional evidence which raises an inference that the time and place of the arrest were arranged to enable the six or seven officers, who participated in the incident, to make a general exploratory search of the house. The warrant for the arrest of Youngblood was issued on the basis of a complaint of a narcotics agent that Youngblood had given the agent a quantity of marijuana. This was a non-violent crime and Youngblood was not in possession of a dangerous weapon when he was arrested. The execution of such an arrest warrant would hardly justify the display of force and manpower apparent from the evidence in this case. The arrest was made at the home of Janie Thompson, a lady friend of Youngblood. Officers Bash, Lyerla and Duncan of the Galena Police Department took up positions in the alley behind the house. Deputy Sheriff Donaldson who made the arrest was assisted by K. B. I. narcotics agents Santiago, Teeslink and Jones. Agent

Santiago did not enter the front door with Donaldson and Jones but went around the house and entered the back door. The three persons in the house when the arrest was made were in the living room. None resisted arrest or had weapons in their possession. The arresting officer knew before the search of the house was conducted that the single shot, heard on entering the house, was fired in the alley behind the house by a member of the Galena Police Department who had stopped and arrested a person fleeing from the back door of the house.

The permissible extent of a search without a search warrant which is incident to a lawful arrest of a person is set forth in K. S. A. 22-2501 as follows:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

"(a) Protecting the officer from attack;

"(b) Preventing the person from escaping; or

"(c) Discovering the fruits, instrumentalities, or evidence of the crime."

In the present case the search of the house went far beyond the area within the arrested person's immediate presence. It was beyond what was necessary to protect the officer making the arrest from attack. Youngblood made no effort to escape once he was discovered in the living room of the Janie Thompson house. The only fruits, instrumentalities or evidence of the crime for which Youngblood was being arrested was in the possession of the narcotics agent Santiago prior to the issuance of the arrest warrant.

In *State v. Garcia & Bell,* 210 Kan. 806, 504 P. 2d 172, this court examined the above statute in the light of *Chimel v. California,* 395 U. S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034. The law setting forth the permissible scope of a search without a search warrant in Kansas, when made incidental to a lawful arrest, is patterned after quoted portions of *Chimel.* (See *State v. Garcia & Bell,* supra.) A general exploratory search of a house under such circumstances is not considered reasonable.

The state relies heavily on *Ker v. California,* 374 U. S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623; *State v. Wade,* 206 Kan. 347, 479 P. 2d 811; and *State v. McClelland,* 215 Kan. 81, 523 P. 2d 357. It distinguishes *State v. Schur,* 217 Kan. 741, 538 P. 2d 689; *State v. Boyle,* 207 Kan. 833, 486 P. 2d 849; and *State v. Yates,* 202 Kan. 406, 449 P. 2d 575, cert. dis. 396 U. S. 996, 24 L. Ed. 2d 461, 90 S. Ct. 496.

However, it would serve little purpose to discuss these cases in

the light of the facts of our present case. On a motion to suppress illegally seized evidence the judge shall receive evidence on any issue of fact necessary to determine the motion, and the burden of proving that the search and seizure were lawful shall be on the prosecution. (K. S. A. 22-3216 [2].) The trial court in the present case found the officers conducted a general exploratory search and it refused to find that the evidence of the additional crime was in plain view of the arresting officers. The argument of the state on appeal is based upon the premise that the evidence was in plain view. Such a premise is not sound in view of the finding of the trial court. If the findings of the trial court on a motion to suppress evidence are based upon substantial evidence this court on review will not substitute its view of the evidence for that of the trial court. (1-3 Hatcher's Kansas Digest, Perm. Supp [Rev. Ed.], Criminal Law, § 438, pp. 326, 327.)

The judgment is affirmed.