No. 100,313

STATE OF KANSAS, *Appellee*, v. CHAD PATRICK MCMULLEN, *Appellant*.

(221 P.3d 92)

Opinion filed December 18, 2009.

*Michael E. Francis*, of Topeka, argued the cause and was on the brief for appellant.

*Natalie Chalmers*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Chad Patrick McMullen appeals his convictions and sentences for two counts of aggravated indecent liberties with a child under age 14. McMullen challenges the admissibility of the child victim's videotaped statement, the voluntariness of his confession, and the legality of imposing consecutive hard 25 prison terms. The appeal comes directly to this court pursuant to K.S.A. 22-3601(b)(1). We affirm the convictions and sentences.

### FACTUAL AND PROCEDURAL OVERVIEW

The victim in this case was J.J., a 5-year-old boy who is the nephew of McMullen's sister-in-law. The incident occurred in the sister-in-law's basement, where McMullen was living at the time. J.J.'s mother discovered the boy on McMullen's bed with his pants down around his ankles and McMullen in another area of the basement. In response to the mother's inquiry, McMullen explained that he was looking for a toy in another room of the basement, while J.J. jumped on the waterbed. The next day, the mother reported the incident to the police.

Helen Swan at the Prairie Advocacy Center conducted a safe-talk interview with J.J., which was videotaped. J.J.'s mother testified that, during the interview, J.J. reported that McMullen had touched his "pee-pee" with his mouth and made J.J. put his hand on McMullen's "pee-pee." The videotape was introduced into evidence at trial over McMullen's objection.

While investigating the basement incident, Detective Kent Biggs contacted McMullen at his place of employment. Initially, Biggs told McMullen that he wanted to get some information about a previously reported robbery. McMullen agreed to meet Biggs at the police station after he finished closing the store. When McMullen arrived at the station at approximately 12:35 a.m., the detective explained that he actually wanted to discuss the incident with J.J. After being advised of his *Miranda* rights, McMullen initially denied having any physical contact with J.J. However, McMullen then asked Biggs "hypothetically" what would happen if he altered his version of the events to be more in line with J.J.'s version. Detective Biggs explained that McMullen would not be

arrested that evening and that his statement would be forwarded to the district attorney who would decide how to proceed. The detective denied making any specific promises in exchange for McMullen's statement.

After discussing his hypothetical question with the detective, McMullen confessed that he pulled down J.J.'s pants and fondled J.J.'s penis for 2 to 5 minutes and that he asked J.J. to touch his penis, which J.J. declined to do. McMullen completed a written statement to that effect and was allowed to leave the station at approximately 2 a.m.

Before trial, the State filed a motion for a *Jackson v. Denno* hearing to establish the voluntariness and admissibility of McMullen's written statement. See *Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964). The district court ruled in favor of the State, albeit the transcript of that hearing does not appear in the record on appeal. Ultimately, the trial court allowed Detective Biggs to read McMullen's written statement to the jury over McMullen's objection.

J.J. testified in person at trial but was reluctant to discuss the incident. He said that he would be too embarrassed to talk about it if he had been touched in that way. When asked on direct examination whether McMullen or anyone else touched him on the "pee-pee" that day, J.J. responded by moving his head from side to side. However, J.J. responded in the affirmative to questions about whether his pants were down while McMullen was in the room; whether McMullen was the one who pulled his pants down; and whether McMullen had his own clothes off. J.J. also identified via picture comparison that when the incident occurred he could see McMullen's genitals.

During Helen Swan's testimony, J.J.'s videotaped statement was played for the trial jury, over McMullen's objection that the video was "repetitive and cumulative." However, neither the videotape nor a transcript of its content appears in the record on appeal.

Ultimately, McMullen was convicted by the jury of two counts of aggravated indecent liberties with a child. His motion for a new trial, based upon the admission of his written confession and J.J.'s videotaped testimony, was denied. The district court denied

McMullen's motion for a departure and sentenced him to two consecutive hard 25 life sentences.

ADMISSIBILITY OF CONFESSION

First, McMullen challenges the voluntariness of his confession. He claims that his mental condition at the time of the interrogation was one of exhaustion and confusion; that the manner of the interrogation involved subtle deception; and that while the interrogation was not necessarily lengthy, he had come from a long day's work, late at night, under the misapprehension that he was going to be interviewed as a witness about a burglary.

### A.  Standard of Review

" 'When reviewing a district court ruling on a motion to suppress a confession, an appellate court reviews the factual underpinnings of the decision under a substantial competent evidence standard. The ultimate legal conclusion drawn from those facts is reviewed de novo. The appellate court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence.' " *State v. Ransom*, 288 Kan. 697, 705, 207 P.3d 208 (2009) (quoting *State v. Gant*, 288 Kan. 76, Syl. ¶ 1, 201 P.3d 673 [2009]).

The State has the burden to prove by a preponderance of the evidence that a confession was voluntary, *i.e.*, that the statement was the product of the defendant's free and independent will. *Ransom*, 288 Kan. at 705-06. The court considers the following nonexclusive factors based upon the totality of the circumstances: " '[T]he defendant's mental condition; the manner and duration of the interrogation; the ability of the defendant to communicate with the outside world; the defendant's age, intellect, and background; the fairness of the officers in conducting the interrogation; and the defendant's proficiency with the English language.' " *Ransom*, 288 Kan. at 705-06 (quoting *State v. Cofield*, 288 Kan. 267, Syl. ¶¶ 2, 3, 203 P.3d 1261 [2009]); see *State v. Morton*, 286 Kan. 632, 640, 186 P.3d 785 (2008).

### B.  Analysis

McMullen's first obstacle is self-inflicted. The record on appeal does not provide the information necessary for this court to review the factual findings upon which the district court's decision was

based. Apparently, McMullen did not file a suppression motion, but rather the *Jackson v. Denno* hearing was requested by the State. Consequently, we have no record of the arguments that McMullen presented to the district court. Further, without the hearing transcript, we have no record of the State's evidence and, obviously, cannot determine whether that evidence was substantial and competent so as to carry the State's burden. Most importantly, the appearance docket, which simply states that McMullen's statement was admissible, is the only record of the court's ruling on the matter, *i.e.*, we have no findings of fact to review. Moreover, the only conclusion of law presented by the record for our review is the ultimate determination by the district court to admit the confession.

At oral argument, McMullen acknowledged that it is his duty to properly designate the record on appeal to support his claims of error. See *State v. Trussell*, 289 Kan. 499, 507, 213 P.3d 1052 (2009); *State v. Paul*, 285 Kan. 658, 670, 175 P.3d 840 (2008). If that record is inadequate, the appellate court presumes the district court's findings were properly supported and the claim of error must fail. *Trussell*, 289 Kan. at 507 (citing *State v. Haney*, 34 Kan. App. 2d 232, 236, 116 P.3d 747, *rev. denied* 280 Kan. 987 [2005]); *Paul*, 285 Kan. at 670.

Nevertheless, even if we were to accept McMullen's version of the facts, we would not be led to the conclusion that his confession was involuntary. His complaint about the interrogation occurring in the early morning hours is misleading, given McMullen's work schedule. McMullen testified that he had 9 hours sleep, arising about noon, before working his shift from 2 p.m. to midnight, after which he went directly to the police station for the interview. For persons working a normal shift, the comparable time of the interview would have been 5:15 to 5:30 p.m. Thereafter, the interrogation lasted approximately 1½ hours. We have affirmed the voluntariness of confessions given under considerably more tiring circumstances. See, *e.g.*, *State v. Gonzalez*, 282 Kan. 73, 101, 145 P.3d 18 (2006) (affirmed confession was voluntary even where defendant complained that he had not slept for 2 days, was under the influence of marijuana, and the interview lasted 2 to 3 hours);

*State v. Ackward,* 281 Kan. 2, 8, 128 P.3d 382 (2006) (confession was voluntary even though interrogation lasted 8 or 9 hours); *State v. Ramos,* 271 Kan. 520, 525, 527, 24 P.3d 95 (2001) (minor's confession voluntary even where he was up all night before questioning and seemed tired to the interrogating officer, but showed no outward signs of exhaustion such as slurred speech, repetition, or incoherence).

McMullen also complains about the detective's employment of "subtle deception" in obtaining the confession. To the extent McMullen is complaining that he was drawn to the police station under false pretenses, such a deception does not impact the analysis in this case. We are not confronted with a question of whether the interview was pursuant to a voluntary encounter, because the detective followed the protocol for a custodial interrogation. Detective Biggs advised McMullen of his *Miranda* rights and told him the true nature of the interrogation, prior to obtaining the confession. *Cf. Morton,* 286 Kan. at 651-54 (law enforcement officer misled defendant as to the nature of the interrogation and did not give *Miranda* warnings).

To the extent McMullen is suggesting that the confession was induced by a promise of leniency, that conclusion is also not warranted. Granted, a promise offered to induce a confession is potentially a form of coercion. *State v. Sharp,* 289 Kan. 72, 81, 210 P.3d 590 (2009). However, McMullen's own testimony established that, in response to his inquiry as to what would happen if he had a different story, the detective simply responded that McMullen would be allowed to go home after the interview and that his statement would be given to the district attorney. We cannot construe the detective's response as a promise of leniency in exchange for a confession.

Given the record before us, we find that the district court did not err in admitting McMullen's written confession into evidence.

### ADMISSIBILITY OF VICTIM'S VIDEOTAPED STATEMENT

Next, McMullen purports to challenge the admissibility of the videotape of the victim's safe-talk interview and the admissibility of the witnesses' testimonies about the contents of the videotape.

However, he fails to present any arguments directly addressing the testimony of witnesses. See *State v. Conley*, 287 Kan. 696, 703, 197 P.3d 837 (2008) (issues not argued deemed abandoned); *State v. Martin*, 285 Kan. 994, 998, 179 P.3d 457 (2008). Further, we are again hampered by an incomplete record, which does not include either a copy of the videotape or a transcript of its contents.

## A.  Standard of Review

" 'When a party challenges the admission or exclusion of evidence on appeal, the first inquiry is relevance. Once relevance is established, evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion, depending on the contours of the rule in question. When the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence is questioned, an appellate court reviews the decision de novo.' *State v. Walters*, 284 Kan. 1, Syl. ¶ 2, 159 P.3d 174 (2007)." *State v. Richmond*, 289 Kan. 419, 426, 212 P.3d 165 (2009).

When the more discretionary aspects of an admissibility determination are challenged, "the district court's decision will not be overturned on appeal if reasonable minds could disagree as to the court's decision." *State v. Boggs*, 287 Kan. 298, 307, 197 P.3d 441 (2008).

## B.  Analysis

On appeal, McMullen's principal complaint appears to be that J.J.'s videotaped statement contradicted his live testimony at trial. However, at trial McMullen objected to the videotape as being repetitive and cumulative. One might ponder how the evidence could be both contradictory and cumulative. In that vein, the State urges us to find that the issue has not been preserved. See *State v. Ransom*, 289 Kan. 373, 388, 212 P.3d 203 (2009) (party may not object on one ground at trial and another ground on appeal).

Nevertheless, while inconsistencies in a witness' statements might well provide excellent ammunition to argue to the jury that little weight should be assigned to the evidence, those contradictions do not render the statements inadmissible. A witness achieves turncoat status when the witness' trial testimony deviates from a previous statement the witness has provided on the topic. *State v. Miller*, 284 Kan. 682, 710, 163 P.3d 267 (2007). K.S.A. 2008 Supp.

60-460(a) authorizes the admission of that prior statement if the witness is present at the hearing and available for cross-examination. See *State v. Holt*, 228 Kan. 16, 22, 612 P.2d 570 (1980) ("'Prior hearsay statements of a "turncoat witness" are admissible as substantive evidence under K.S.A. 60-460[a].'"); *State v. Fisher*, 222 Kan. 76, Syl. ¶ 2, 563 P.2d 1012 (1977) (law enforcement officers permitted to testify as to child sexual abuse victim's prior statements implicating the defendant after child recanted the accusation at trial). Indeed, in this case, even McMullen's own live testimony contradicted the written statement he had previously given.

Additionally, McMullen cites and discusses our prior decision in *State v. Henderson*, 284 Kan. 267, 160 P.3d 776 (2007). Apparently, McMullen believes that case is compelling because this court addressed the admission of a videotaped statement from a child victim and found a violation of the defendant's constitutional right to confrontation. 284 Kan. 267, Syl. ¶ 3. Of course, the distinguishing fact in *Henderson* was that the videotape was the only evidence presented to the jury in which the victim herself identified her abuser; the child did not testify and had never been subjected to cross-examination. 284 Kan. at 276. Here, J.J. took the witness stand at trial and was subject to McMullen's cross-examination. See *Crawford v. Washington*, 541 U.S. 36, 57, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004) (right of confrontation satisfied by defendant's opportunity to cross-examine the witness). Accordingly, any suggestion by McMullen that the admission of the safe-talk interview videotape violated his Sixth Amendment right to confront witnesses is without merit.

Finally, McMullen contends that the State did not preserve its right to present J.J.'s testimony via videotape under the provisions of K.S.A. 22-3434. The short answer to that contention is that K.S.A. 22-3434 simply does not apply in this case. That statute essentially provides for alternative methods to obtain the cross-examined trial testimony of a child victim, where forcing the child to testify in open court would be detrimental to the child. Here, the videotape contained the safe-talk interview conducted by a social worker. It was not intended to be a substitute for the child's

testimony at trial, nor did it meet the procedural requirements to be used as such.

On the record before this court, we find that the district court did not err in allowing the admission of J.J.'s videotaped interview.

## CONSECUTIVE HARD 25 LIFE SENTENCES

Finally, McMullen asserts that the district court did not have jurisdiction to impose two consecutive hard 25 life sentences under K.S.A. 21-4643. The legal basis for McMullen's challenge is not readily discernible. While he asserts that "the sentence was contrary to the statute," he fails to explain the perceived statutory violation. Instead, he appears to argue that it is simply unfair that his aggregate sentence for the two current convictions includes a minimum prison sentence of 50 years, whereas if he had been prosecuted as a second-time offender, he could only receive a mandatory minimum prison sentence of 40 years under K.S.A. 21-4643(b).

### A. *Standard of Review*

To the extent that McMullen is asking us to interpret the sentencing statute, he has presented a question of law subject to unlimited review. See *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009).

### B. *Analysis*

McMullen does not challenge that the individual hard 25 life sentences for each conviction were statutorily authorized under K.S.A. 21-4643. Rather, he appears to suggest that where multiple convictions in one case fall under the provisions of Jessica's Law, K.S.A. 21-4643, then the mandatory minimum sentences for all such convictions must be imposed to run concurrently. Of course, the statute says no such thing.

To the contrary, in multiple conviction cases the sentencing judge has the discretion to run the individual sentences either concurrently or consecutively. See K.S.A. 21-4608(a); K.S.A. 21-4720(b). McMullen has not directed us to any authority excepting hard 25 life sentences from this sentencing court discretion. Previously, this court has affirmed the imposition of consecutive life

sentences for convictions arising out of the same transaction. See *State v. Vanderveen*, 259 Kan. 836, 843, 915 P.2d 57 (1996) (trial court did not abuse its discretion by imposing consecutive life sentences); *State v. Stafford*, 255 Kan. 807, 817, 878 P.2d 820 (1994) (same, regarding hard 40 sentences.).

With respect to McMullen's fairness argument, we are not seduced by his attempt to create an inequity by comparing his situation to that of a second-time offender. If McMullen would have had a prior conviction for one of the crimes covered by Jessica's Law, he would have been facing a potential, additional mandatory prison time of 80 years for his two current convictions, if run consecutively. Likewise, if his two convictions had been committed and prosecuted sequentially, he would have received a mandatory minimum prison term of 25 years for the first conviction and 40 years for the second, *i.e.*, a potential of 65 years' imprisonment before parole eligibility.

More to the point, the legislature did not plainly state, nor are we persuaded, that it intended that a defendant committing multiple crimes subject to Jessica's Law is always to be sentenced as if the defendant had committed only a single offense. Accordingly, we find that the district court had the authority to impose consecutive sentences for McMullen's two convictions.

Affirmed.