(266 P.3d 1227)
No. 104,163

STATE OF KANSAS, *Appellee*, v. MISTY A. ORAM, *Appellant*.

900

Opinion filed December 2, 2011.

*Charles D. Lamb*, of Kansas City, for appellant.

*Shawn M. Boyd*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREENE, C.J., GREEN, J., and LARSON, S.J.

GREEN, J.: Misty Oram appeals her conviction for possession of marijuana after a bench trial was held on stipulated facts. On appeal, Oram raises two arguments. First, Oram argues that the trial court correctly concluded that the search violated *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), but she

argues that the trial court erred when it determined that the good-faith exception to the exclusionary rule applied. We determine that the trial court correctly held that the search violated *Gant*. Nevertheless, we determine that because the search was not conducted in an objectively reasonable manner, the good-faith exception to the exclusionary rule did not apply. Second, Oram contends that the trial court erred when it denied her motion to suppress her confession regarding evidence that was seized in the illegal search. We agree. Accordingly, we reverse and remand this case to the trial court with directions to vacate Oram's conviction.

On October 2, 2008, at approximately 10:20 p.m., sheriff's deputies in Wyandotte County, Kansas, conducted a routine traffic stop that eventually resulted in the arrests of the driver Oram (for obstruction) and the passenger Emanuel Butler (for an outstanding warrant). The deputies handcuffed both Oram and Butler and placed them in the back seat of separate patrol cars. The deputies then searched the car and found a white paper bag behind the driver's seat which they believed to be marijuana. It was later determined that the substance in the white paper bag was marijuana.

After finding the marijuana, Oram was read her *Miranda* rights which she later waived and agreed to answer questions. Oram confirmed that the marijuana in the car was hers and admitted that she uses it to medicate herself. Oram was then arrested for possession of marijuana.

Oram filed three separate motions to suppress. In the first motion, Oram argued that her arrest was unlawful and that the later search was unlawful because it took place while she was secured and away from the vicinity of her car. After hearing evidence, the trial court issued a memorandum opinion. The trial court determined that the deputies had probable cause to arrest Oram for obstruction. The trial court then determined that although the State contends that the search was an inventory search, it was clearly a search incident to arrest. The trial court further held that the search incident to arrest violated the rule set out in *Gant* but did not explain which factors were violated. After determining that the search was unlawful, the trial court determined that because

the deputies acted in good-faith reliance on the law when the search was made, the evidence would not be suppressed.

Oram filed two later motions where she argued that her confession should be suppressed because it was the fruit of an illegal search. The trial court again denied her motions. The trial court held that although the search violated *Gant*, the search was done in good faith and, as a result, the statement was voluntary.

After her motions were denied, Oram waived her right to a jury trial and proceeded to a bench trial on stipulated facts. The trial court found Oram guilty of possession of marijuana. Oram was sentenced to 12 months' probation.

*Did the Trial Court Err In Denying Oram's Motion to Suppress Evidence Seized From a Search Incident to Arrest?*

On appeal, Oram first argues that the trial court erred in denying her motion to suppress the evidence from the search of her car because there was no lawful basis for the search. Oram asserts, and the trial court agreed, that the search was illegal because it exceeded the permissible scope of a search incident to arrest under *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). Oram further contends that the trial court erred in applying the good-faith exception to the exclusionary rule.

In response, the State argues that the deputies relied in good faith on well-settled caselaw and Kansas statutes when they searched Oram's car incident to arrest. The State maintains that when the search was made, the law allowed the deputies to search a car incident to arrest for evidence of a crime. The State contends that the deputies complied with current law when the search was made and, therefore, any later change in the law should not affect the search that previously took place. Additionally, the State argues that applying the exclusionary rule to this case would only penalize law enforcement for the legislature's error and would serve no deterrent purpose.

In reviewing the trial court's ruling on a motion to suppress, an appellate court reviews the factual findings to determine if they are supported by substantial competent evidence and the ultimate legal conclusion by a de novo standard. *State v. Daniel*, 291 Kan.

490, 495, 242 P.3d 1186 (2010). "Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion." *State v. Schultz,* 289 Kan. 334, 340, 212 P.3d 150 (2009).

Warrantless searches are considered unreasonable and invalid unless they fall within a recognized exception to the search warrant requirement. *Daniel,* 291 Kan. at 496. The State bears the burden of proof to demonstrate that a challenged search or seizure was lawful. *State v. McGinnis,* 290 Kan. 547, 551, 233 P.3d 246 (2010). An appellate court does not reweigh the evidence, determine the credibility of witnesses, or resolve conflicting evidence. *State v. McMullen,* 290 Kan. 1, 4, 221 P.3d 92 (2009).

When the material facts to the trial court's decision on a motion to suppress are not in dispute, which is the case here, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Thomas,* 291 Kan. 676, 682, 246 P.3d 678 (2011). Consequently, we exercise unlimited review in determining whether the search of Oram's car was a valid search incident to arrest or if it fits within the good-faith exception to the exclusionary rule of *United States v. Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677, *reh. denied* 468 U.S. 1250 (1984).

*Was the search a valid search incident to arrest?*

Before addressing the main argument based on the good-faith exception, we must consider briefly Oram's arguments that the search of the car was not a valid search incident to arrest based on the *Gant* holding. Oram contends that the search of the car violated the *Gant* holding for two reasons: (1) because the search exceeded the purposes allowed for a search under *Gant*; (2) because the search exceeded the search limitation of the area within Oram's immediate presence. The trial court did not explain in its holding which factors in *Gant* were violated. Therefore, an analysis of both factors is necessary to determine whether the trial court correctly held that the search violated *Gant*. We will first consider whether the search of Oram's car exceeded the purposes allowed for a search incident to arrest under *Gant*.

In Kansas, the permissible circumstances, purposes, and scope of a search incident to arrest are controlled by statute. *State v. Conn*, 278 Kan. 387, 391, 99 P.3d 1108 (2004). K.S.A. 22-2501 defines the parameters of police authority to conduct a search incident to arrest. When Oram was arrested, K.S.A. 22-2501 read as follows:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's *immediate presence* for the purpose of
"(a) Protecting the officer from attack;
"(b) Preventing the person from escaping; or
"(c) Discovering the fruits, instrumentalities, or evidence of a crime." (Emphasis added.)

Years before this search occurred, our Supreme Court declared that K.S.A. 22-2501 was intended to guide "officers and courts as to one method of making a valid, warrantless search." *State v. Garcia & Bell*, 210 Kan. 806, 811, 504 P.2d 172 (1972). Later, our Supreme Court interpreted K.S.A. 22-2501 to determine the permissible extent of a search without a search warrant which is incident to a lawful arrest. *State v. Youngblood*, 220 Kan. 782, 784, 556 P.2d 195 (1976). Moreover, the *Youngblood* court pointed out that it had previously examined K.S.A. 22-2501 in light of *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685, *reh. denied* 396 U.S. 869 (1969), and determined that the statute was patterned after quoted portions of *Chimel*. *Youngblood*, 220 Kan. at 784; see also *State v. Anderson*, 259 Kan. 16, 22, 910 P.2d 180 (1996) ("In Kansas, we have a statute [K.S.A. 22-2501] that sets forth the permissible circumstances and purposes under which a search incident to an arrest can be made. The statute may possibly be more restrictive than prevailing case law on the Fourth Amendment would permit, but this does not alter the plain language of the statute.").

It is important to note that the legislature amended K.S.A. 22-2501(c) in 2006 by changing "the" to "a" crime. L. 2006, ch. 211, sec. 8. In doing so, "the legislature expanded an arresting officer's authority to search, without a warrant, for evidence of the fruits, instrumentalities, or evidence of *any* unspecified crime." *State v.*

*Richardson,* No. 101,821, 2010 WL 1610407, at *2 (Kan. App. 2010) (unpublished opinion).

In *State v. Henning,* 289 Kan. 136, 209 P.3d 711 (2009), relying on *Gant,* our Supreme Court struck down K.S.A. 22-2501(c) as facially unconstitutional under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. In doing so, our Supreme Court stated:

"The current wording of K.S.A. 22-2501(c) would permit a search of a vehicle incident to an occupant's or a recent occupant's arrest, even if the purpose of the search is not focused on uncovering evidence only of the crime of arrest. K.S.A. 22-2501(c) is thus facially unconstitutional under the Fourth Amendment to the federal Constitution and under Section 15 of the Kansas Constitution Bill of Rights." 289 Kan. 137, Syl. ¶ 6.

As stated earlier, the *Henning* court grounded its decision that K.S.A. 22-2501(c) was facially unconstitutional based on the *Gant* holding. In *Gant,* the defendant was arrested for driving with a suspended license. The officer arrested the defendant 10 feet to 12 feet from his car, handcuffed him, and placed him in the back seat of a patrol car. An officer then searched the defendant's car, discovering a bag of cocaine in the pocket of a jacket on the back seat. The United States Supreme Court held that the search was unreasonable under the Fourth Amendment because the defendant was secured and could not reach the passenger compartment and because it was unreasonable to believe the vehicle contained evidence of the defendant's crime of arrest, which was driving with a suspended license. See 556 U.S. at 344.

Our Supreme Court noted that under *Gant,* "[t]o have a valid search incident to arrest, when there is no purpose to protect law enforcement present, the search must seek evidence to support the crime of arrest, not some other crime, be it actual, suspected, or imagined." *Henning,* 289 Kan. at 147. Our Supreme Court further stated that "[i]n the vehicle context, 'in many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains . . . evidence [relevant to the crime of arrest.].'" 289 Kan. at 147 (quoting *Gant,* 556 U.S. at 343).

Although our Supreme Court has struck down K.S.A. 22-2501(c) as facially unconstitutional, we point out that under *Gant*, there was no reasonable basis for the deputy to believe that the car contained evidence of Oram's crime of arrest (for obstruction). As a result, the search was an unreasonable search incident to arrest under *Gant* and *Henning*. Clearly, the trial court would have been correct, under these circumstances, to hold that the search violated *Gant*.

*Immediate Presence*

Next, we will consider whether the search of Oram's car exceeded the search limitation of the area within Oram's immediate presence.

Because *Chimel* interprets the scope of the area within the immediate control of the arrestee, we must look to it for guidance. In *Gant*, the United States Supreme Court revisited the *Chimel* holding and stated the following:

"In *Chimel*, we held that a search incident to arrest may only include 'the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' [Citation omitted.] That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. [Citation omitted.] If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply. [Citation omitted.]" *Gant*, 556 U.S. at 339.

In analyzing the *Gant* decision, our Supreme Court stated: "The [*Gant*] Court unambiguously reaffirmed that *Chimel's* reasoning remains the go-to rubric. It 'continues to define the boundaries of the [search-incident-to-arrest] exception'; if one of the exception's two purposes cannot be served by a search, the exception cannot save the search, under the Fourth Amendment." *Henning*, 289 Kan. at 146.

Additionally, in *Henning*, our Supreme Court stated that "*Belton* did not create an exception to the exception to be invoked every time law enforcement wants to search a vehicle in the vicinity and

from which the arrestee has emerged. Rather, *Belton* merely applied *Chimel* to the unique set of circumstances before the Court." 289 Kan. at 146-47.

Consequently, when an arrestee remains near a car, the passenger compartment is likely to be within the control of the arrested person. But when the arrestee has been handcuffed, removed from near the car, and locked inside a patrol car, the car is no longer within the arrestee's immediate presence.

Here, Oram was no longer within the immediate presence of the car. She had been arrested for obstruction, handcuffed, removed from the scene, and placed in the back seat of a patrol car. Moreover, the deputies were not concerned with protecting their safety or safeguarding any evidence of the crime of arrest. Neither were they concerned with preventing Oram from escaping, since she had been handcuffed and locked inside a patrol car. Because both justifications for the search incident to arrest exception, namely protecting arresting officers and safeguarding evidence of the offense of arrest that the arrestee might conceal or destroy, are absent, the exception does not apply. See *Gant*, 556 U.S. at 343-51.

In holding that the search exceeded the "immediate presence" requirement under K.S.A. 22-2501, our Supreme Court in *Youngblood* stated:

"In the present case the search of the house went far beyond the area within the arrested person's immediate presence. It was beyond what was necessary to protect the officer making the arrest from attack. Youngblood made no effort to escape once he was discovered in the living room of the Janie Thompson house. The only fruits, instrumentalities or evidence of the crime for which Youngblood was being arrested was in the possession of the narcotics agent Santiago prior to the issuance of the arrest warrant." 220 Kan. at 784.

See also *State v. Vandevelde*, 36 Kan. App. 2d 262, 269-75, 138 P.3d 771 (2006) (Where defendant had been handcuffed, searched, and placed in the back seat of a patrol car by police before his truck was searched, the search of the truck was outside the scope of the defendant's immediate presence and could not be justified as a search incident to arrest under K.S.A. 22-2501); *Richardson*, 2010 WL 1610407, at *2; *cf. State v. Davison*, 41 Kan. App.

2d 140, 143-48, 202 P.3d 44 (2009), *rev'd and remanded* by order dated October 9, 2010 (based on *Gant*).

Because the car was no longer within Oram's immediate presence as required by *Gant* and K.S.A. 22-2501, we conclude that the search was unreasonable. Therefore, again, the trial court would have been correct, under these circumstances, to hold that the search violated *Gant* and the statutory limits of K.S.A. 22-2501.

## Good-faith Exception

Having concluded that there was a Fourth Amendment violation in this case, we must now determine whether to apply the good-faith exception to the exclusionary rule. "In determining whether to apply the exclusionary rule, a court should examine whether such application will advance the deterrent objective of the rule." *Illinois v. Krull*, 480 U.S. 340, 353, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987). We look to *Leon*, 468 U.S. 897, for guidance on this issue.

In *Leon*, police seized evidence based on a search warrant that was later deemed invalid. The United States Supreme Court held that the search constituted a Fourth Amendment violation, but "concluded that, in the Fourth Amendment context, the exclusionary rule can be modified somewhat without jeopardizing its ability to perform its intended functions." 468 U.S. at 905. "The *Leon* Court concluded that, even if an officer in a given case obtained evidence in violation of the Fourth Amendment, it made no sense to exclude that evidence if the officer was nevertheless acting in an objectively reasonable manner when he seized the evidence." *United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir. 2006) (citing *Leon*, 468 U.S. at 918-20).

Based on previous caselaw, "*Leon*'s good-faith exception to the exclusionary rule generally applies only narrowly outside the context of a warrant." 444 F.3d at 1251. In *Herrera*, while refusing to apply the good-faith exception, the Tenth Circuit Court of Appeals stated the following:

"In light of this very narrow application of *Leon*'s good-faith exception, we are disinclined to extend that exception to the facts of this case, where a state trooper conducted a random, warrantless seizure to effect an administrative search based

upon the officer's own mistaken belief that Herrera's truck was subject to such a random inspection." 444 F.3d at 1251-52.

In this case, the State requests that we apply *Leon's* good-faith exception and allow in the evidence obtained during the unconstitutional search. Oram raises two arguments that need to be analyzed separately to determine whether the good-faith exception of *Leon* applies. In addressing Oram's first reason, we previously determined that it would have been unreasonable for the deputies to believe that "evidence of the offense of arrest," which was obstruction (giving the deputies a false name for a passenger who was riding in the car), would be found in the passenger compartment of her car, thus violating the holding in *Gant*. In addressing Oram's second reason, we determined that because the car was no longer within Oram's immediate presence as required by *Gant* and K.S.A. 22-2501, the deputies search of the car was unreasonable.

*K.S.A. 22-2501(c)*

In addressing Oram's first argument, we need to review Kansas caselaw and K.S.A. 22-2501(c) to determine if the deputies' actions were reasonable when the search was made. Then, we need to determine whether *Leon's* good-faith exception applies to this argument.

The State's only argument here is that the search of the car was a proper search incident to the arrest of Oram under K.S.A. 22-2501(c). More specifically, the State's argument is that the search depended on the recently amended and newly effective language of K.S.A. 22-2501(c), which considerably broadened its scope and exceeded the purposes allowed for such searches under the *Chimel* rule. See *Henning*, 289 Kan. at 148. The State failed to make any argument on whether *Leon's* good-faith exception applies to Oram's other argument based on the "immediate presence" language of K.S.A. 22-2501.

To support its argument that the search was reasonable based on K.S.A. 22-2501(c), the State relies on *Krull* and *Daniel*, 291 Kan. 490. The State first argues that this case is similar to *Krull*. In *Krull*, the United States Supreme Court held that the Fourth Amendment exclusionary rule does not apply to evidence obtained

by police who acted in objectively reasonable reliance on a statute that was later found unconstitutional. 480 U.S. at 349-53.

The facts in *Krull* are similar to the facts of our case. In both cases, the officers reasonably relied on the language of a statute that was constitutional when the search was made. Moreover, in both cases, that statute was later found unconstitutional. As the United States Supreme Court held in *Krull*, suppressing the evidence in this situation would punish the officer for the legislature's mistake, which is not the intended purpose of the exclusionary rule. 480 U.S. at 349-50.

In *Daniel*, our Supreme Court held that "prior precedent compels recognizing a good-faith exception when it can be determined the officer conducting the search incident to arrest was acting in objectively reasonable reliance on K.S.A. 22-2501(c)." 291 Kan. at 493. Our Supreme Court did not address the immediate presence language found in K.S.A. 22-2501 because Daniel did not argue that her car was outside her immediate vicinity when the search was made. See 291 Kan. at 501-02.

After our Supreme Court applied the good-faith exception to the exclusionary rule in *Daniel*, the United States Supreme Court reached a similar conclusion in *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011). In *Davis*, the United States Supreme Court concluded: "The police acted in strict compliance with binding precedent, and their behavior was not wrongful. Unless the exclusionary rule is to become a strict-liability regime, it can have no application in this case." 564 U.S. at 240.

Accordingly, based on *Davis* and *Daniel*, which both adopted *Krull*, we conclude that when the search was made, K.S.A. 22-2501(c) allowed the deputies to search the car for evidence of *a* crime rather than just for *the* crime that Oram was originally arrested for, that is, obstruction. Therefore, we determine that the good-faith exception to the exclusionary rule was applicable to the deputies' search of Oram's car under K.S.A. 22-2501(c).

*Immediate Presence*

Although we have determined that the good-faith exception applies to Oram's first argument, it is still necessary to determine whether the good-faith exception applies to Oram's second argument.

It is important to note that in *Daniel* our Supreme Court only applied the good-faith exception to K.S.A. 22-2501(c). Our Supreme Court specifically focused on the language of K.S.A. 22-2501(c), but it did not address the "immediate presence" statutory language of K.S.A. 22-2501 because Daniel did not argue that her car was outside her immediate presence when the search was conducted. 291 Kan. at 501-02. That is not the situation in our case. Consequently, the question still remains whether the good-faith exception should be applied when the search took place outside the arrestee's immediate presence as required by K.S.A. 22-2501.

Here, unlike in *Daniel*, Oram does argue that her car was outside her immediate vicinity when the search was made. In fact, in all three motions Oram filed she specifically mentioned that she was secured and away from the vicinity of her vehicle when it was searched. The motions stated the following:

"Based upon the Defendant's nervous behavior and the fact the passenger had no identification, the Sheriff Deputy 'arrested' the Defendant, placed her in handcuffs and removed her from the immediate area of her vehicle.

. . . .

"Upon Defendant's arrest, and while she was secured and away from the vicinity of her vehicle, Sherriff's Deputies then searched the Defendant's vehicle . . . ."

Additionally, in Oram's brief, she makes the following arguments that her car was outside her immediate presence when the search occurred:

"The Defendant [Oram] was arrested by law enforcement for obstruction. . . . She was arrested for this offense, hand-cuffed and removed from the scene and placed in the back of a patrol car. Once secured, deputies searched her vehicle as incident of the arrest . . . .

. . . .

"In this [*Gant*] case, the Court held that police may search a vehicle incident to a recent occupant's arrest only '. . . when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search, . . . '

and only when it is '. . . reasonable to believe the evidence relevant to the crime of arrest might be found in the vehicle.'

. . . .

"Pursuant to *Gant*, the Defendant [Oram] filed a Motion for Suppression, believing her facts fell within *Gant's* stated limitations.

. . . .

"The facts in the instant case are also indistinguishable from *Gant*. The defendant was arrested for obstruction, hand-cuffed and placed in a patrol car. Afterward, Deputies searched her car hoping to find evidence of other crimes and/or guns. The trial court held that the warrantless search violated *Gant*."

To determine whether the deputies acted reasonably when the search was conducted, it is necessary to determine what the settled law was concerning the immediate presence language in K.S.A. 22-2501.

For many years the plain language of K.S.A. 22-2501 has limited the physical scope of the area where police could search incident to arrest. K.S.A. 22-2501 limited the area where police could search to that area which was within the immediate presence of the arrestee. As early as 1976, our Supreme Court considered the scope of K.S.A. 22-2501 in *State v. Youngblood*, 220 Kan. 782, 556 P.2d 195 (1976). In that case, the Court held that the search of a house went far beyond the area within the arrested person's immediate presence. 220 Kan. at 784. Our Supreme Court based its decision on the fact that Youngblood was arrested, under control, and searched before officers searched the house. See 220 Kan. at 783.

Similarly, in *Vandevelde*, our court held that the search was not reasonably conducted for one of the purposes under K.S.A. 22-2501 and, therefore, it could not be justified as a valid search incident to a lawful arrest. 36 Kan. App. 2d at 275. In reaching that conclusion, our court stated:

"We are unable to see how Vandevelde who was handcuffed, in the back seat of a patrol car, and in the custody of an officer could gain access to his truck. At that point, there was no fear that Vandevelde would be able to retrieve a weapon from his truck and attack officers because nothing in the truck was in Vandevelde's immediate presence." 36 Kan. App. 2d at 273.

This issue was also specifically addressed by now Chief Judge Greene in *Davison*, 41 Kan. App. 2d 140, *reversed and remanded* by Supreme Court summary order filed October 9, 2009 (based

on *Gant*, 556 U.S. 332). In his dissent, Chief Judge Greene determined that the car was no longer within Davison's immediate presence when the search was conducted. Judge Greene noted that before the search of the car was initiated, Davison was searched, handcuffed, and placed in the back seat of the patrol car. 41 Kan. App. 2d at 151 (Greene, J., dissenting). It is also important to note that Davison, like Oram, challenged the permissible physical scope of the search, arguing that the car was no longer within her immediate presence when the search was initiated.

Most recently, in *Richardson*, our court held that the search "could not be incident to an arrest, because it was made after the defendant was arrested, handcuffed, and on his way to jail." 2010 WL 1610407, at *2.

Based on this extensive case history, we conclude that well-trained deputies in Kansas would not have believed in good faith that they had the authority to search a car after the defendant had been handcuffed, searched, and placed in the back seat of a patrol car on October 2, 2008. As stated earlier, for many years in Kansas K.S.A. 22-2501 has limited the physical scope of a search incident to arrest to the arrestee's immediate presence. Deputies are presumed to know the law of the jurisdiction that they are enforcing. Therefore, a failure to understand the law by the very person charged with enforcing it is not objectively reasonable under the Fourth Amendment. Unlike *Daniel*, where our Supreme Court found that when the police searched Daniel's car and purse that a reasonable officer would not have known that K.S.A. 22-2501(c) was unconstitutional, the deputies in this case had knowledge or, at the very least, they should have been aware that their search of Oram's car was in violation of the statutory limits of K.S.A. 22-2501.

In light of that, we find that the deputies in this case should have been aware of Kansas' caselaw indicating that a car is no longer within the immediate presence of an arrestee when the arrestee has been handcuffed and secured in the back of a patrol car. Therefore, the deputies should have been aware that the search violated the statutory limits of K.S.A. 22-2501.

As stated earlier, *Leon's* good-faith exception to the exclusionary rule applies only narrowly outside the context of a warrant. "It has not been applied when the mistake resulting in the Fourth Amendment violation is that of the officer conducting the seizure and search, rather than a neutral third party not engaged in the 'competitive endeavor of ferreting out crime.' " *Herrera*, 444 F.3d at 1251 (quoting *Leon*, 468 U.S. at 914).

In *Herrera*, the Tenth Circuit Court of Appeals stated that *Leon's* good-faith exception "almost always applies only when there is a determination made by a third party upon which the officer reasonably relied to conduct the challenged seizure or search, such as the magistrate in *Leon*, the legislature in *Krull* and in [*United States v.*] *Johnson* [364 F.3d 1185 (10th Cir. 2004)], and the court clerk in [*Arizona v.*] *Evans* [514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995)]." *Herrera*, 444 F.3d at 1253.

In this case, it was the deputies' intentional conduct that led to the Fourth Amendment violation. The deputies were not relying on any third party when they conducted the search. The deputies failed to comply with the "immediate presence" language of K.S.A. 22-2501. No one told the deputies to not comply with K.S.A. 22-2501. Unlike *Leon*, *Krull*, and *Evans*, where police officers could not be faulted for relying on the conduct of a third party, surely the deputies here can be faulted for their deliberate conduct in failing to act in conformity with the "immediate presence" language of K.S.A. 22-2501 which, for more than a quarter century, had been understood and applied by our courts that a search incident to arrest be limited to the area within the "immediate presence" of the arrestee.

Clearly, this is not the first case where officers have violated the "immediate presence" language of K.S.A. 22-2501. In fact, on more than one occasion, our court has held that a search was an unreasonable search incident to arrest under K.S.A. 22-2501 when the defendant had been handcuffed and secured in the back seat of a patrol car when the search was conducted. See *Youngblood*, 220 Kan. at 784; *Davison*, 41 Kan. App. 2d 140 (reversed and remanded by order); *Vandevelde*, 36 Kan. App. 2d 262; *Richardson*, 2010 WL 1610407, at *2; *State v. Keaton*, No. 101,480, 2009

WL 3172820, at *1 (Kan. App. 2009) (unpublished opinion); *State v. Witmer*, No. 100,646, 2009 WL 3082577, at *3-4 (Kan. App. 2009) (unpublished opinion).

Were *Leon*'s good-faith exception to apply in this circumstance, the improper police action of conducting a search beyond the immediate presence of the arrestee would not effectively deter this deliberate, recurring, or systemic negligent conduct. See *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009) ([T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.").

Cases that have applied *Leon*'s good-faith exception to the exclusionary rule did so because the court determined that no deterrent effect existed that would further the purpose of the exclusionary rule. That is not the case here. As stated earlier, a reasonably well-trained police officer would have known that the search was illegal. Therefore, the exclusion of the evidence would effectively deter police from conducting unauthorized searches in violation of the immediate presence language under K.S.A. 22-2501. Moreover, because the object of K.S.A. 22-2501 is to define the authority of police officers to conduct a search incident to arrest, the evidence should be suppressed when police officers exceed that authority.

When the search was conducted, K.S.A. 22-2501 was clear on the permissible scope of a search incident to arrest. Because the deputies chose to conduct an unauthorized search in violation of the immediate presence language under K.S.A. 22-2501, we decline to apply the good-faith exception to this case.

*Inventory Search*

The State also argues that the search of Oram's car was valid as an inventory search. An inventory search is an exception to the search warrant requirement, but only if it is conducted under "standardized criteria" or an "established routine"; that is, it will be valid if the police department has a policy regarding conducting such a search and if the policy is followed in the particular case. *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990);

*Colorado v. Bertine,* 479 U.S. 367, 374-75 & n.6, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987). Such a policy is required under *Bertine* to justify an inventory search as an exception to the search warrant requirement and to limit the discretion of the police so as to assure that the searches are done consistently and reasonably and do not become a ruse for conducting a generalized search to discover evidence of criminal activity. *Bertine,* 479 U.S. at 374-75.

In this case, the State failed to meet its initial burden to show that the inventory search of Oram's car was conducted in accordance with a standardized or an established routine procedure. Although it was not necessarily fatal to the State's case that it did not place in evidence the Wyandotte County Sheriff's Department's (Sheriff's Department) written guidelines for conducting an inventory search, the State failed to elicit from the deputy witnesses the relevant content of those guidelines. The only testimony the State elicited about the content of the Sheriff's Department's inventory search procedure was that once permission to tow the car was granted, a search of the car would have to be completed at the scene before the car was towed. No additional relevant details of the procedure for an inventory search were introduced into evidence.

Because the State failed to establish the content of any standardized or established routine procedure for an inventory search promulgated by the Sheriff's Department, it necessarily follows that the State failed to show that the search of Oram's car was conducted in accordance with any standardized procedure. Moreover, even if the State had established that the search was otherwise conducted in accordance with a reasonable standardized procedure for conducting an inventory search, suppression would still be required because the State failed to show that the deputies created an actual inventory list of the items found in the car. Indeed, the form used as the inventory list was the tow report. The form failed to list any items found in Oram's car. "The policy or practice governing inventory searches should be designed to produce inventory." *Wells,* 495 U.S. at 4.

Because the deputies failed to document any items found in the alleged inventory search, it tends to show that the purpose of the

search of the car was "a general rummaging in order to discover incriminating evidence." See *Wells*, 495 U.S. at 4. Moreover, the deputies' motivation to conduct a generalized search for evidence of a crime is evidenced by their testimony. For example, in testifying that he intended to conduct a generalized search to discover evidence of criminal activity, Deputy Shane Mellot testified:

"[Oram's Attorney]: . . . I believe you testified in the preliminary hearing of this case; correct?

"[Deputy Mellot]: Correct.

"[Oram's Attorney]: And you testified at that time in a *search incident to arrest* was—was effected on the car; is that correct?

"[Deputy Mellot]: Correct.

"[Oram's Attorney]: And no warrant was attempted prior to that search; correct?

"[Deputy Mellot]: Negative." (Emphasis added.)

Although Deputy Andrew Carver testified that he intended to conduct both an inventory search and a generalized search for evidence of a crime, he testified that his initial motivation was to search for contraband and weapons:

"[Oram's Attorney]: And, eventually, you did a search of the car incident to arrest; correct?

"[Deputy Carver]: No.

"[Oram's Attorney]: We heard testimony earlier from the officer that it was a search incident to arrest. Are you saying it wasn't now?

"[Deputy Carver]: There were two reasons to search the vehicle, so—

"[Oram's Attorney]: At the preliminary hearing, didn't you agree that you were doing a search incident to arrest?

"[Deputy Carver]: I believe I said prior to towing the vehicle.

"[Oram's Attorney]: Prior to towing, you searched incident to arrest; correct?

"[Deputy Carver]: also incident to arrest, yes."

. . . .

"[Oram's Attorney]: You didn't—in your testimony at preliminary hearing—hearing, you never said anything about doing an inventory search; correct?

"[Deputy Carver]: I don't remember what I said in that—in the prelim.

"[Oram's Attorney]: You would agree when you searched that car your initial motivation was to see if you could find *contraband* in the car; correct?

"[Deputy Carver]: *It was mainly that and also for weapons.*" (Emphasis added.)

Later, the trial court held in its memorandum decision that the deputies had conducted a generalized search for evidence of a crime:

"The State contends this was an inventory search and, as such, another exception to the requirement of a warrant. While the vehicle was going to be towed at some point because of the arrest of both occupants, the deputies clearly conducted this search as a search incident to arrest under the old standard of *New York v. Belton*, 453 U.S. 454 (1981)."

When reviewing a motion to suppress, this court does not reweigh evidence, determine witness credibility, or resolve conflicts of evidence. *State v. McMullen*, 290 Kan. 1, 4, 221 P.3d 92 (2009). Moreover, this court normally gives great deference to the factual finding of the trial court. *State v. Vandiver*, 257 Kan. 53, 58, 891 P.2d 350 (1995).

Based on the memorandum decision, it is readily apparent that the trial court made a credibility determination. The only testimony that was heard at the suppression hearing was that of the two deputies. Clearly, the trial court did not find Deputy Carver's testimony regarding the inventory search exception to be credible.

Although incriminating evidence may be discovered as a result of an inventory search, it should not be its purpose. "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce inventory." *Wells*, 495 U.S. at 4. Moreover, "[t]he individual police officer must not be allowed so much latitude that inventory searches are turned into "a purposeful and general means of discovering evidence of a crime." *Bertine*, 479 U.S. at 376 (Blackmun, J., concurring).

As result, we cannot uphold the search of Oram's car as an inventory search.

*Inevitable Discovery*

The State contends that based on a valid inventory search, the marijuana seized would have been admissible under the inevitable discovery doctrine. "Under the inevitable discovery doctrine, evidence will not be suppressed, despite a constitutional violation in the way it was discovered or obtained, if the same evidence could have come to the attention of law enforcement independent of the violation. [Citation omitted.]" *State v. Huff*, 278 Kan. 214, 221, 92 P.3d 604 (2004).

The State seems to solely base its inevitable discovery argument on a valid inventory search of Oram's car. Because we have previously determined that the inventory search of Oram's car was improper, the State's inevitable discovery argument fails. The State has simply failed to show that the marijuana evidence ultimately or inevitably would have been discovered by lawful means. See *State v. Brown*, 245 Kan. 604, 612, 783 P.2d 1278 (1989).

*Did the Trial Court Err in Denying Oram's Motion to Suppress Her Confession?*

Having concluded the search of the car was illegal and the evidence seized should have been suppressed, we must next consider whether Oram's subsequent confession was so tainted by the illegal search as to also be rendered inadmissible. See *State v. Childers*, 222 Kan. 32, 40, 563 P.2d 999 (1977). It is important to note that evidence is not "fruit of the poisonous tree" merely because it would not have come to light except for the illegal police activity. Instead, the inquiry is whether the evidence objected to came to light by "exploitation of that illegality." *State v. Knapp*, 234 Kan. 170, 176, 671 P.2d 520 (1983).

In reviewing a trial court's decision regarding the suppression of a confession, an appellate court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard. *State v. Edwards*, 291 Kan. 532, 545, 243 P.3d 683 (2010).

Oram argues that because her confession came just minutes after the illegal search was conducted, her confession was not voluntary and that it should be suppressed. The State failed to address this issue in its briefs.

Under the attenuation doctrine, our Supreme Court has found that the poisonous taint of an unlawful search or seizure dissipates when the connection between the unlawful police conduct and the challenged evidence becomes attenuated. *State v. Martin*, 285 Kan. 994, Syl. ¶ 3, 179 P.3d 457, *cert. denied* 555 U.S. 880 (2008).

Our Supreme Court has set forth four factors to be considered when determining whether a defendant's confession following an illegal arrest is admissible: (1) whether *Miranda* warnings were

given; (2) the proximity of the illegal arrest and the statement or confession; (3) the purpose and flagrancy of the officer's misconduct; and (4) other intervening circumstances. *State v. Hill*, 281 Kan. 136, 153, 130 P.3d 1 (2006); see *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966). While the present case involves the consideration of a confession and physical evidence obtained as the result of an illegal search, rather than an illegal arrest, the same factors should be applied to the present case.

The trial court did not have an evidentiary hearing to determine whether the confession was attenuated. The trial judge simply denied Oram's motion to dismiss stating, "Well, I will deny the third motion to suppress on the same basis that I denied the earlier one. I do think it's a violation of *Gant*; but, once again, I think the search was made in good faith. And as a result, then the statement was voluntary." Although the trial court failed to engage in an attenuation analysis below, it is important for this court do so.

1. Miranda *Warnings*

It is undisputed that Oram was advised of her *Miranda* rights before the deputies asked her about the marijuana found in the car. The main fact that weighs against admissibility here is that Oram was still handcuffed and placed in the back seat of the patrol car when the deputies were questioning her about the marijuana. This could arguably be considered a coercive atmosphere, which could make her statement involuntary.

2. *Proximity of Illegal Arrest and Confession*

Here, the discovery of the marijuana in the car appears to have been just a few moments before the deputies questioned Oram about the drugs. Additionally, it appears that Oram was in continuous police custody between her arrest and the interrogation and that she was not free to leave. In *Hill*, the fact that the defendant was in continuous police custody weighed in favor of suppressing the defendant's statements. See 281 Kan. at 154.

### 3. *Purpose and Flagrancy of Officer's Misconduct*

This factor weighs against admissibility as well. First, the deputies illegally searched the car before attempting to get a search warrant. Second, it is clear from the record that the deputies searched the car looking for contraband and weapons. Once the deputies discovered the marijuana, they immediately began asking Oram about it and seeking a confession once she received her *Miranda* warnings.

### 4. *Other Intervening Circumstances*

Oram concedes that she was lawfully arrested for obstruction; however, Oram argues that the search of her car was not a lawful search incident to arrest under *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), and, therefore, the evidence seized should be suppressed.

The trial court correctly concluded that the search violated *Gant*, but it held that because the search was in good faith, then the confession was admissible. Based on the analysis above, we determined that the search of the car violated *Gant* and that *Leon's* good-faith exception should not apply to the facts of this case. As a result, we further determined that the evidence seized from the illegal search of the car should be suppressed.

Because the marijuana found in the car was the result of an illegal search, the subsequent confession regarding the marijuana should also be suppressed. There were no intervening events to break the connection between the illegal search and Oram's confession. Without the illegal search, the confession would likely not have occurred.

Reviewing all of the evidence, the only factor weighing in favor of attenuating the unlawful search of the car and admitting Oram's confession is that Oram was given *Miranda* warnings before she made her confession. The remaining three factors all weigh in favor of suppressing Oram's confession. Finally, there were no intervening circumstances between the illegal search of the car and Oram's confession sufficient to purge the taint of Oram's illegal search of her car. As a result, the record does not contain substantial competent evidence to support the trial court's finding that the depu-

ties' search of the car was done in good faith and, as a result, Oram's confession was voluntary.

Under all of the circumstances, the connection between Oram's illegal search of the car and Oram's confession cannot be deemed "so attenuated as to dissipate the taint." Because Oram's confession resulted from the exploitation of the unlawful search of her car, Oram's confession was inadmissible and should have been suppressed. Accordingly, we reverse and remand this case to the trial court with directions to vacate Oram's conviction.

Reversed and remanded with directions.